502 P.2d 1340

**STATE of Arizona, Plaintiff,**

v.

**Leo LATIGUE, Defendant.**

**No. 2485.**

Supreme Court of Arizona,
In Banc.

Nov. 17, 1972.

522

Moise Berger, Maricopa County Atty. by Lon S. Taubman, Deputy County Atty., Phoenix, for plaintiff.

Arrick & Ball by Kenneth M. Arrick, Phoenix, for defendant.

HAYS, Chief Justice.

The parties to this Superior Court criminal case have stipulated that the following two questions be certified to this court:

"(1) Where a Deputy Public Defender, who acted as co-counsel for the defendant, received confidential communications from the defendant and had access to all records and information pertaining to the defense, subsequently becomes Chief Deputy County Attorney for Maricopa County, should the Maricopa County Attorney's Office be precluded from prosecuting that individual?"

"(2) If the Maricopa County Attorney's Office is precluded from prosecuting the defendant, should an independent authority be appointed to prosecute and should such authority be denied access to any evidence obtained by the County Attorney's Office?"

The questions are so closely related that we shall discuss the principles involved, together.

It is, of course, fundamental that a lawyer cannot represent two clients whose interests conflict. The problem is how far to extend this principle. The ethics committee of our state bar has ruled that a lawyer cannot defend a client in a criminal case which is being prosecuted by another member of his firm who is the prosecuting attorney. Ethics Committee Opinion No. 71–27. The State's brief concedes this point but seeks to avoid it by pointing out that in the instant case the lawyer who represented the defendant has taken no part in the prosecution and is not the County Attorney, but is "a mere assistant." It appears, however, that he is

more than a mere assistant—he is the County Attorney's chief deputy, and as such, he has supervisory powers and duties over the assistant county attorney who is prosecuting. Moreover, if the County Attorney's Office is functioning efficiently, its staff has frequent meetings to discuss cases, and even without meetings, staff members often talk about their cases with one another. The situation in the instant case, therefore, may be distinguished from the Ethics Committee Opinions Nos. 190, 235 and 260.

■■ We do not rest our decision only on the fact that the attorney involved here is the County Attorney's chief deputy; even if he were not, that office would have to divorce itself from the prosecution in this case, because even the appearance of unfairness cannot be permitted. What must a defendant and his family and friends think when his attorney leaves his case and goes to work in the very office that is prosecuting him? Even though there is no revelation by the attorney to his new colleagues, the defendant will never believe that. Justice and the law must rest upon the complete confidence of the thinking public and to do so they must avoid even the appearance of impropriety. Like Caesar's wife, they must be above reproach. As the Ethics Committee Opinion No. 235 put it:

"Ordinarily knowledge or information held by any one member of the County Attorney's office is tantamount to knowledge of all such members, and that public confidence in our judicial system may be undermined if the appearance of evil, as well as the evil itself, is not avoided."

We are cognizant of the fact that No. 235 was to some extent overruled by later No. 260, but the above-quoted paragraph represents our concept of what must be done, and should be the law of this State.

It is, of course, necessary that the County Attorney secure the appointment of a special prosecutor if he wishes to continue the prosecution of this case. The record indicates that the trial court has agreed to take this matter under advisement until the opinion of this court has been made available to it.

As a part of the trial court's order in this case, there should be included specific directions as to what material shall be made available to the new special prosecutor. This may include any material that the County Attorney has obtained from sources *completely independent of his chief deputy*—police investigations and reports, confessions, items of evidence, etc., if any, used in the murder, coroner's report, statements of witnesses taken outside the presence of the chief deputy, etc. There is no reason to require a complete new investigation. The order should also specifically prohibit use of any of the work-product or any other item having any possible connection with the chief deputy. It should prohibit any discussion between the chief deputy and the special prosecutor. Every possible effort should be made to prevent any evasion, or appearance of evasion, deliberate or accidental.

Having answered the certified questions, the case is remanded to the Superior Court for compliance with the answers.

CAMERON, V. C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.