567 P.2d 1198

E. Bernardo BICAS and Samuel Bicas; Devinvest Corporation, an Arizona corporation, Petitioners,

v.

SUPERIOR COURT of the State of Arizona IN AND FOR the COUNTY OF PIMA, Judge Alice Truman, Respondents,

and

Michael P. KAHN and Jane Doe Kahn, husband and wife, Real Parties in Interest.

No. 2 CA–CIV 2522.

Court of Appeals of Arizona, Division 2.

April 26, 1977.

Rehearing Denied June 8, 1977.

Review Denied July 19, 1977.

Stompoly & Even, P. C. by John R. Even and John P. Lyons, Tucson, for petitioners.

Schorr & Leonard, P. C. by S. L. Schorr and Franklin O. Eldridge, Tucson, for real parties in interest.

## OPINION

RICHMOND, Judge.

Did the respondent court abuse its discretion in denying petitioners' motion to exclude the attorneys for the real parties in interest from further representation of them in pending superior court litigation? We agree with petitioners that the answer is yes.

Petitioners are the plaintiffs in a pending superior court action against the real parties in interest. (Hereinafter petitioners

are referred to as plaintiffs or by name and real party in interest Michael P. Kahn as defendant.) The lawsuit involves the sale of certain assets by defendant to plaintiffs pursuant to a written agreement executed December 24, 1975.

The plaintiffs filed the subject motion to exclude the law firm of Schorr & Leonard, P. C., from continuing to represent the defendants in the lawsuit, alleging in pertinent part that both before and after the sale involved in the lawsuit the law firm of Miller, Pitt & Feldman, P. C., represented plaintiff E. Bernardo Bicas personally and Devinvest Corporation, of which he was the chief executive officer, in numerous financial and personal matters; that during the course of said representation Bicas had imparted confidential information to representatives of the law firm and had revealed personal financial matters of a confidential nature to representatives of the firm; that during that period of time David Leonard, the present partner of defendants' counsel, was a partner and shareholder in Miller, Pitt & Feldman, P. C.; and that the information imparted by Bicas was directly related to the issues involved in the pending lawsuit. Plaintiffs argued that the Miller firm had represented Bicas personally in the areas of tax planning and corporate affairs of E.B.B., Inc., and had performed legal work in reference to Devinvest Corporation after defendant was no longer a stockholder, officer or employee of the corporation, and that Bicas's financial affairs were relevant to the issue of duress in the current lawsuit.

The opposition to the motion to exclude conceded that during 1975 Leonard was a shareholder in the Miller firm, and that during the same period Bicas and defendant were represented by the law firm both personally and in connection with their joint business interests in Devinvest Corporation. The position taken, however, was that Leonard did not work on any matters relating to either Bicas, defendant, or their joint interests in the corporation and that he had gained no confidential information relating to the representation of Bicas or defendant in such matters. It was further pointed out that in November, 1975, before execution of the December 24 agreement between Bicas and defendant, Leonard informed Miller, Pitt & Feldman of his intention to terminate his relationship with that firm and become a partner in the Schorr firm, and that Leonard had no knowledge of or involvement in the December 24 agreement either before or after its execution and acquired no information concerning the transaction or any other aspects of Miller, Pitt & Feldman's subsequent representation of Bicas. Leonard was not aware that a sale was being negotiated or that the Miller firm represented Bicas, and was absent from Tucson from December 19, 1975, until early in January, 1976. In January and February, 1976, Leonard's duties with the Miller firm were limited to clearing up matters for which he was responsible during his association with the firm. Notwithstanding the continued representation of both Bicas and defendant during this period by his former law firm, Leonard was not exposed to any information relating to the representation of any of the parties and his association with the Miller firm was completely terminated on February 28, 1976, the day before his association with the Schorr firm.

At a hearing on plaintiffs' motion, Paul Wolf, a shareholder in the Miller, Pitt & Feldman law firm, testified that he was familiar with both the individual and the corporate plaintiffs as well as the defendant, and had done most of the work in representing the individuals in Devinvest Corporation. He represented E. Bernardo Bicas individually and still had constant contact with him in connection with the affairs of the corporations in which he was interested. To a somewhat lesser degree, he represented Samuel Bicas on an individual basis and prior to December, 1975, represented the Messrs. Bicas individually with respect to the partnerships and corporations in which they were involved. He also had discussed personal estate planning matters with them but had referred those matters to another member of the firm. According to Wolf's testimony, Leonard had been a shareholder in the law firm when Wolf

joined it in 1970 and continued in that capacity until the end of February, 1976, and since the latter date had "continued to work on cases together with our firm." He testified that Leonard had access to all of the files.

Since approximately 1971, Wolf had represented defendant and entities with which he was associated, and prior to that time other members of the firm had done so. He testified that "somewhere along the line" defendant brought Bicas to the law firm because Bicas and defendant were engaged in real estate development and syndication of real estate in this locale. Prior to December 24, 1975, Wolf represented defendant, the Bicases, Devinvest Corporation, and other corporations, general partnerships and limited partnerships involving the individuals. According to Wolf, most of the work concerning the individuals and their associated entities either was done by Wolf himself or "funneled" through him. Before December 24, 1975, Wolf had represented the Bicases personally in connection with matters other than those relating to the Bicas-Kahn business ventures. He "assumed there was no secret" that the Bicases and defendant knew that he was representing them personally in addition to their joint matters. He also testified:

"Q. Let me ask Mr. Wolf if he can answer that in addition to Messrs. Figliulo, Wezelman, Bergin, and Don Pitt, did anyone else in the firm have any responsibility or work on the matter involving Bicas or Devinvest?

"A. I don't believe any responsibility. It is possible that other members of the firm had been conferred with about specific problems that had arisen in connection with various matters.

"Q. Let me get down to brass tacks then with respect to David J. Leonard before December 24, 1975, did Leonard have any responsibility for the Bicas or Devinvest files?

"A. I would not say he had responsibility, no.

"Q. Did you ever discuss a Bicas or Devinvest matter with David Leonard?

"A. I'm sure I did.

"Q. Do you recall when?

"A. The one instance that I am positive I discussed with him, or fairly positive, probably occurred sometime in the year 1974 or first half of '75.

"Q. That was in relation to Devinvest?

"A. Technically in relation to Devinvest, but actually in relationship to the whole entrepreneural scheme involved.

"Q. What was the matter, do you recall?

"A. Had to do with—I inquired of him as to whether he thought, in connection with an agreement whereby three pieces of property were to be purchased, whether an objection to a rather minor title problem in connection with one of them was justification for cancelling and rescinding all three transactions based on a provision that entitled the buyer, Devinvest, to cancel if their lawyer didn't like the status of title, and we discussed whether or not this was enough of an impediment to title to justify cancellation of three substantial transactions.

"Q. Were there other matters that you discussed with David Leonard?

"A. You know, I can't remember any specifically, but it seems to me in the course of years there must have been something else, but—

"Q. Do you remember?

"A. Pardon?

"Q. Can you remember what they might be?

"A. No."

Wolf also testified that the agreement of December 24, 1975, was one under which Bicas bought out defendant's interest in a batch of partnerships and Devinvest, and that he was not involved in the closing because, since they were buying each other out and he had represented them, he told them to get other lawyers outside the Miller firm. He did give information to those other lawyers to assist them in preparing the documents and understanding what was involved.

Leonard testified that he had done no work for the Bicases and did not even know

that his law firm represented them until very recently and that he had done no work for the Devinvest Corporation during the same period of time. He did not recall the matter that Wolf had described, but stated:

". . . although Paul would come into my office from time to time, sit down, say, can I take a minute? Here is a provision, would you look at this? What do you think it means, or something like that. It is conceivable that he may have come and asked me my thoughts on the law relating to some provision without explaining to me what it was, but I don't believe I ever did any work for Devinvest Corporation or ever knew about any of the work that was being done for Devinvest."

Leonard denied any connection with, knowledge of, or overhearing any information about Devinvest, the Bicases or any of the entities involved and stated that his knowledge of the entire matter when he was associated with the Miller firm was limited to the fact that he knew that Wolf was doing defendant's development work and was forming limited partnerships of some sort. He testified that he had reviewed his time sheets for the period from December 24, 1975, to the end of February, 1976, and they reflected that he had done no work whatsoever for Devinvest, the Bicases, or their associated entities. He denied ever having looked at any of the files concerning the various parties but conceded that had he wanted to, he could have done so.

There is no question but that the lawsuit, which sets forth three counts, concerns the agreement of December 24, 1975. Count One seeks rescission on the basis that defendant's actions prior to consummation of the agreement constituted duress or business compulsion, and Counts Two and Three allege breach of various covenants.

The principle which bars an attorney from representing an interest adverse to that of a former client is most often said to be grounded upon the confidential relationship which exists between attorney and client, the courts taking the view that by imposing this disability upon the attorney, confidential information conveyed by the former client is protected from possible disclosure and wrongful use. *See* annotation 52 A.L.R.2d 1243, 1250, § 4 (1957) and cases cited therein. In *Nichols v. Elkins*, 2 Ariz. App. 272, 408 P.2d 34 (1965), we held that when two or more clients employ the same attorney *in the same business*, communications made by them *in relation to such business* are not privileged *inter sese* nor privileged between any one of the parties and the attorney. This principle, however, is not applicable here, because the record reflects that the Miller firm not only represented Bicas and defendant with respect to mutual business relationships but also represented them individually as to other matters.

In support of their motion to exclude, the plaintiffs relied upon three state court decisions: *Kurbitz v. Kurbitz*, 77 Wash.2d 943, 468 P.2d 673 (1970); *Alpha Investment Company v. City of Tacoma*, 13 Wash.App. 532, 536 P.2d 674 (1975); *Edelman v. Levy*, 42 A.D.2d 758, 346 N.Y.S.2d 347 (1973). The defendants, on the other hand, urged the respondent court to adopt the rationale of three recent federal court decisions: *Gas-A-Tron of Arizona v. Union Oil Co. of California*, 534 F.2d 1322 (9th Cir. 1976); *Silver Chrysler Plymouth, Inc. v. Chrysler Mot. Corp.*, 518 F.2d 751 (2nd Cir. 1975); *American Roller Company v. Budinger*, 513 F.2d 982 (3rd Cir. 1975). Our analysis of the authorities cited by both parties leads us to conclude that the circumstances bring this case within the rationale of the Washington and New York cases and are distinguishable from the factual posture of the federal decisions.

In *Gas-A-Tron*, the "Berman" firm filed actions against Exxon, Shell and others claiming violation of the anti-trust laws. Shortly thereafter, Berman hired Burbidge, a former employee of the "McCutchen" law firm for approximately one and a half years, as an associate. McCutchen had represented Shell and Exxon in a variety of matters, including some anti-trust cases, over a period of many years. After review-

ing the nature of Burbidge's work for McCutchen with reference to Shell, the Ninth Circuit Court of Appeals held that the Berman firm was not disqualified because Burbidge had not actually obtained any confidential information about either Shell or Exxon that would be relevant to the pending litigation and Burbidge had not worked on matters that were "substantially related" to the pending litigation.

In *Silver Chrysler Plymouth, Inc.*, Chrysler was represented by Kelley Drye, and Silver Chrysler was represented by the firm of Hammond & Schreiber, P. C. Schreiber had been employed as an associate by Kelley Drye and had worked on certain Chrysler matters. He had worked briefly for Kelley Drye after graduation from law school in 1965, and again from September, 1966, to February, 1969. The Kelley Drye firm at the time had some 30 partners and 50 associates. The court pointed out that there is a reason to differentiate for disqualification purposes between lawyers who become heavily involved in the facts of a particular matter and those who enter briefly on the periphery for a limited and specific purpose relating solely to legal questions. It stated:

"In large firms at least, the former are normally the more seasoned lawyers and the latter the more junior. This is not to say that young attorneys in large firms never become important figures in certain matters but merely to recognize that some of their work is often of a far more limited variety. Under the latter circumstances the attorney's role cannot be considered 'representation' . . . so as to require disqualification." 518 F.2d at 756–7.

After reviewing the affidavits submitted by both parties, the court concluded that Schreiber had rebutted any inference arising from his former association with Kelley Drye that he possessed confidences that could be used against Chrysler in the instant lawsuit.

In *American Roller Company*, one of American Roller's adversaries was DuPont. A motion to disqualify the plaintiff's attorneys and their law firm was filed by DuPont on the grounds that one of plaintiff's attorneys, Niro, had worked for DuPont for three and a half years, during which time he had prepared and processed a number of patent applications pertaining to "Corfam" materials. DuPont contended that because of Niro's exposure to confidential DuPont information relating to "Corfam", it was ethically improper for him to represent an interest adverse to DuPont. The test laid down by the Third Circuit for resolving the disqualification question was whether the matter to which Niro was exposed while at DuPont was "substantially related" to the issues likely to arise during the course of the litigation.

■ The situation here differs from that of the lawyers involved in those federal cases. Leonard was not merely an employee or associate of a large law firm but was a partner in a firm with approximately 12 lawyers. The fact that he did not personally handle the Bicas affairs and possessed none of their confidential information is not controlling. As stated in *Kurbitz v. Kurbitz*, supra:

"The relationship of partners in the practice of law is a close and intimate one. The everyday interchange of ideas and problems between legal associates may inadvertently release information which would have been otherwise kept confidential. Should one partner—or former partner—be allowed to represent clients with adverse interest, confidences would surely be violated."

468 P.2d at 676.

We agree with plaintiffs that any attorney must avoid not only the fact, but even the appearance of representing conflicting interests. *Edelman v. Levy*, supra. It appears that Leonard while a partner in the Miller firm at the very least had access to information which is material to the present suit. Most important, we believe, as a partner in a relatively small law firm he was involved in the "every day interchange of ideas and problems" referred to in *Kurbitz* but lacking under the facts of the federal cases relied on by defendants. In *Gas-A-Tron*, for example, the court held that any appearance of impropriety was dispelled by evidence that the associate did not see any of the files in question. The

same cannot be said of a partner in a closely knit firm, whose expert counsel is available to less experienced practitioners. Neither Leonard nor Wolf could testify positively regarding all of their discussions of the parties' several legal matters—discussions that Leonard might recall, however, during the progress of the instant case. Where it can reasonably be said that in the course of former representation an attorney *might* have acquired information related to the subject matter of his subsequent representation, the attorney should be disqualified. *Alpha Investment Company v. City of Tacoma,* supra; *Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562 (2nd Cir. 1973). This disqualification, we hold under the circumstances of this case, properly extends from the disqualified attorney to his new partner. We believe that strict adherence to the proscription against "appearance of impropriety" will best serve to develop and foster the public's respect for and confidence in our legal system.

Therefore, the order of the respondent court denying petitioners' motion to exclude is vacated with directions to enter an appropriate order consistent herewith.

HOWARD, C. J., and HATHAWAY, J., concurring.