**UNITED STATES of America, Plaintiff,**

v.

**Michele CATALANOTTO, Greggory Kommatos, Salvatore Rina, Humberto Lopez Melchor, Charles Joseph Battaglia, Jr., Albert Peter Anastasio, Robert Louis Talbot, and Joseph Rae, Defendants.**

**No. CR 78–235–TUC–WCF.**

United States District Court,
D. Arizona,
Tucson Division.

Dec. 18, 1978.

Bates Butler, III, Stephen M. Dichter, Asst. U.S. Attys., Tucson, Ariz., for plaintiff.

Andrew R. Sherwood, Phoenix, Ariz., J. Michael Hennigan, Beverly Hills, Cal., John A. Fioramonti, Tucson, Ariz., for defendant Rae.

## MEMORANDUM AND ORDER

FREY, District Judge.

This matter is before the Court on defendant Joseph Rae's Motion to Disqualify the Office of the United States Attorney for the District of Arizona, and to Quash the Second Superseding Indictment against Mr. Rae in this case. A review of the relationship between Mr. Rae, Mr. Jon R. Cooper, and the Office of the United States Attorney is necessary for an understanding of the ethical questions that are raised.

Prior to January of 1978, Mr. Cooper had been employed by the Pima County Attorney's Office in Tucson, Arizona. In January of 1978, Mr. Cooper entered private law practice. While so engaged, Mr. Cooper was retained by Mr. Rae. Mr. Rae, in a sworn affidavit, avers that he retained Mr. Cooper in connection with various state and federal investigations that were then being conducted. He further alleges that he spent many hours detailing to Mr. Cooper his relationship with several individuals, including Mr. Charles Battaglia. Mr. Battaglia is one of Mr. Rae's co-defendants in this case. Mr. Rae also avers that he discussed an automobile with Mr. Cooper and that such automobile is the same one that subsequently became involved in Counts I, II, III, and IV of the Second Superseding Indictment.

In March of 1978, Mr. Cooper ceased representing Mr. Rae, and spoke with Mr. A. Bates Butler, III, the First Assistant United States Attorney for the Tucson Office of the United States Attorney, with regard to employment in that office. He was offered a job, commencing work in May of 1978. Mr. Cooper informed Mr. Butler soon after he started that he had previously represented Mr. Rae, and he was involved in a lawsuit to collect legal fees from this former client. Mr. Cooper alleges that he was not paid for the legal services he performed for Mr. Rae. He has assigned his claim to Mr. Gary Kneip. Mr. Cooper agreed to pay the court costs in an action to collect the fee, and is to receive the balance of any recovery, after a deduction for attorney's fees involved in the collection. In September of 1978, a complaint was filed against Mr. Rae for the legal fees in the Superior Court of the State of Arizona. This suit is still pending.

In August of 1978, the United States Attorney's Office in Tucson decided to present an indictment to the Grand Jury in which Joseph Rae was charged. Mr. Butler at that time issued an order to the employees of the United States Attorney's Office in Tucson, indicating that the case involving Mr. Rae and his co-defendants should not be discussed in the presence of Mr. Cooper, nor was Mr. Cooper to be given access to any of the information in the file. Both Mr. Cooper and Mr. Butler aver that they have had no relevant communication with regard to this case. They do, however, indicate that on one occasion Mr. Cooper was present in Mr. Butler's office when Mr. Butler received a phone call regarding this case. Mr. Cooper left the room before anything relevant was said.

There are approximately ten attorneys employed in the criminal section of the United States Attorney's Office in Tucson. Mr. Cooper's office is in the criminal section, next to Mr. Stephen Dichter. Mr. Dichter and Mr. Butler have had the primary responsibility for the prosecution of this case.

■ The first question raised in this motion is what standards of conduct for the United States Attorney's Office in practice before this Court should be applied. Rules of Practice of the District Court are clearly applicable, as are standards for practice in District Courts promulgated by the Ninth Circuit and the Supreme Court of the United States. In the District of Arizona, we must also look to the law of Arizona, since Rule 7(d) of the Rules of Practice of the United States District Court for the District of Arizona provides:

> " 'The Code of Professional Responsibility,' as set forth in Rule 29(a) of the Rules of the Supreme Court of the State of Arizona, shall apply to court proceedings . . . in the United States District Court for the District of Arizona."

Rule 29(a) of the Arizona Supreme Court Rules incorporates A.R.S. Title 32, Chapter 2; all of the Rules of the Supreme Court and the American Bar Association Code of Professional Responsibility.

We look first, then, to the law of Arizona with regard to disqualification of attorneys. In *Bicas v. Superior Court In and For Pima County*, 116 Ariz. 69, 567 P.2d 1198 (1977), the Court addressed the question of imputation of knowledge. The Court held that in small firms (12 partners in this case) knowledge may be imputed to all members of the firm. The Arizona Supreme Court has also addressed the question of disqualification of the prosecutor's office. The Court held, in *State v. Latigue*, 108 Ariz. 521, 502 P.2d 1340 (1972), that where an attorney has received confidential information from a client, and subsequently is employed by the prosecutor's office, the prosecutor's office may not be involved in a prosecution against the former client on a matter related to the confidential information that was given. *State v. Latigue, supra,* resolved the question that had developed because of a conflict between several opinions of the Ethics Committee, including Opinions 190, 235 and 260. The Court quoted with approval from Ethics Committee Opinion No. 235, which held that:

"Ordinarily knowledge or information held by any one member of the County Attorney's office is tantamount to knowledge of all such members, and that public confidence in our judicial system may be undermined if the appearance of evil, as well as the evil itself, is not avoided."

The Ninth Circuit has also addressed the question of disqualification. In *Gas-A-Tron of Arizona v. Union Oil of California*, 534 F.2d 1322 (9th Cir. 1976) the Court held that the disqualification of an attorney was improper. *Gas-A-Tron* was a civil case, involving antitrust allegation. Two law firms were involved in the issue. The first firm filed actions against Exxon, Shell, and others claiming violation of antitrust laws. Shortly thereafter, the first firm (plaintiff's lawyers) hired a lawyer who had been an associate in a second firm (defendant's lawyers). The second firm had represented Shell and Exxon in a variety of matters, including some antitrust cases. The associate averred that he had received no confidential information on the cases, and the Circuit Court refused to impute any confidential information to him. The case followed the reasoning of *Silver Chrysler Plymouth v. Chrysler Motors Corp.*, 518 F.2d 751 (2nd Cir. 1975). In *Silver* the Court held that not all employees of a law firm are to be imputed to have knowledge about all cases that their employer undertakes, especially at the law clerk and associate levels. A higher amount of information can be imputed as the person goes higher in the firm, with the most being imputed to the principals. This rationale allowed for more mobility for young people in the legal profession. *Gas-A-Tron, supra,* did hold that if a substantial relationship could be shown between the pending litigation and the matters handled by the associate while employed by the first firm, the information could be imputed to the new firm, they could be disqualified. The Ninth Circuit has recently addressed the question of whether the Office of the United States Attorney should be disqualified in *United States v. Weiner*, 578 F.2d 757 (9th Cir. 1978). In *Weiner*, error was asserted on the refusal of the trial judge to disqualify the

Office of the United States Attorney from prosecuting the case. An attorney was employed by a law firm that represented the defendants in the case. The attorney left the firm and went to work for the S.E.C. The defendants alleged close cooperation between the S.E.C. and the United States Attorney resulted in the prosecution. The Court held that:

"In order to disqualify the United States Attorney's office, the court would first have to impute to the former private attorney knowledge of the Equity Funding litigation possessed by other members of his former law firm. Second, the court would have to impute this same knowledge to the other attorneys at the SEC. And third, the court would have to impute all SEC knowledge to the office of the United States Attorney by virtue of the alleged cooperation between the Department of Justice and the SEC."

*United States v. Weiner, supra* at 767.

The Court in *Weiner* refused to find error in the lack of disqualification, finding that the size and complexity of the governmental agencies involved made the imputation of knowledge impossible.

*Weiner* can be distinguished from the instant case in that the office of the United States Attorney involved in this case is relatively small, making imputation of knowledge within the governmental agency more feasible. Also, there is no intermediate agency, such as the SEC, to further cloud the imputation of knowledge to the prosecutors.

■ A reconciliation of the law as promulgated by the Ninth Circuit with the standards of professional conduct in Arizona leads us to the conclusion that the office of the United States Attorney *in Tucson* must be disqualified if a substantial relationship can be shown between the subject matter of the private representation and the subject matter of the prosecution. The question of substantial relationship poses another difficult question. Mr. Rae, in his affidavit, alleges that related matters were discussed. The defendant does not have the burden of specifying the secret and confi-

dential information made available to Mr. Cooper, nor can he do so without the clear possibility of disclosure of the very confidences the Canons seek to protect. *Chugach Electric Association v. United States District Court for the District of Alaska*, 370 F.2d 441, 444 (9th Cir. 1966). Disclosure of exactly what was discussed could also result in significant Fifth Amendment incrimination problems. Mr. Cooper also is prevented from revealing exactly what was discussed. He is proscribed, by Canon 4 of the Code of Professional Responsibility, from revealing confidences and secrets lodged with him by his clients.

■ The only way that Mr. Cooper could reveal the exact nature of the discussions he had with Mr. Rae would be if Mr. Rae waived his right to protection by the privilege. The government claims that by raising the issue, Mr. Rae has made just such a waiver. In *United States v. Woodall*, 438 F.2d 1317 (5th Cir. 1970), a case involving a defendant who appealed his sentence on the basis that his attorney had given him misinformation with regard to the extent of possible sentencing, the Court adopted a two step test for waiver of the attorney-client privilege. The test was taken from 8 Wigmore, *Evidence*, Section 2327 at page 638.

"A leading text in the field of evidence arrives at the same conclusion. It notes that waiver by implication involves two basic elements. The first is subjective— Does the person holding the right to claim the privilege intend to waive it? The second element is objective—Is it fair and consistent with the assertion of the claim or defense being made to allow the privilege to be invoked? This objective determination should be based upon whether the position taken by the party goes so far into the matter covered by the privilege that fairness requires the privilege shall [end] when, subjectively, he never intended that result."

*United States v. Woodall, supra*, at 1324.

In applying this standard to the instant case, we find that neither element of the test is met. Mr. Rae certainly does not

intend to waive the privilege. He has gone no deeper into the matter covered by the privilege than is necessary to raise this issue.

Even if this Court, as the government suggests, brought Mr. Cooper in to testify, and the privilege was waived, we can see no valid purpose that would be served. If Mr. Cooper testified that the subject matter of the representation was totally unrelated to this case, it would create a conflict in testimony. This conflict would take the instant case outside the scope of *Gas-A-Tron, supra.* In *Gas-A-Tron*, the allegations by the attorney that he had no confidential information were uncontroverted.

Even without further clarification from Mr. Rae and Mr. Cooper, the Court need not decide the substantial relationship question in a vacuum. The Court is aware, based on the facts and the record before it, of the basic circumstances surrounding the relationship between Mr. Cooper and Mr. Rae. The government contends that "the very most that Rae can reasonably expect anyone to believe is that he told Cooper and Kneip that he knew Battaglia, that he owned a car that was registered to the ranch, and that Battaglia had been driving the car". The Court must disagree. It is very plausible that Mr. Rae divulged much more to Mr. Cooper about his relationship with Mr. Battaglia than merely that he knew him. It is certainly possible that relationships were discussed that would have a bearing on this case. It is also possible that the discussions concerning the car had or might have a direct bearing on this case.

Looking at the totality of the circumstances surrounding the representation of Mr. Rae by Mr. Cooper, it appears that there is a strong possibility that the representation and the subsequent prosecution were substantially related. Even if there is a question as to what, if anything, concerning this case was actually revealed, there is certainly the appearance that the opportunity to reveal matters related to this case existed. Canon 9 admonishes attorneys that even the *appearance* of professional impropriety should be avoided. In this case

the appearance of impropriety can certainly be drawn from the surrounding circumstances.

This brings us to the question of the proper remedy at this time. Mr. Rae would have the Court disqualify the entire United States Attorney's Office for the District of Arizona. The Court does not feel that this is necessary in this case. It would appear that the disqualification of the Tucson Office is required, along with anyone else who has participated in this case to this point. If the case was prosecuted by the Phoenix Office, the Office appears to be large enough to fall within the rationale of *Weiner, supra*. It would make the imputation of knowledge very difficult. The United States Attorney would also have the choice of having the case prosecuted by a special prosecutor, as suggested in *Latigue, supra.*

Because of the conflict of interest in the Tucson branch of the United States Attorney's Office at the time the indictment was presented to the Grand Jury, the Second Superseding Indictment must be quashed as to Mr. Rae. In effect, an unauthorized person has appeared before the Grand Jury, in violation of the Federal Rules of Criminal Procedure, Rule 6(d). *United States v. Braniff Airways, Inc.*, 428 F.Supp. 579 (W.D. Texas 1977).

 With respect to the private lawsuit by Mr. Cooper against Mr. Rae, it has the same appearance of impropriety as discussed above. It should be avoided and likewise this matter warrants disqualification. The appearance of impropriety is that it can well appear to Mr. Rae and to the public generally that his prosecution could be retaliatory or coercive in nature. That is, designed to force a resolution of the disputed civil issues.

IT IS ORDERED:

1. That the Second Superseding Indictment against Mr. Joseph Rae in the above captioned case is quashed and all pending motions of defendant Rae are declared moot.

2. That the Tucson Office of the United States Attorney for the District of Arizona

**508**

is disqualified from further prosecution of Mr. Joseph Rae with regard to the matters presented to the Grand Jury in this indictment.

3. That this case shall proceed to trial as scheduled on all remaining defendants and counts with defendant Rae severed therefrom.