628 P.2d 950

**Louis Anthony RODRIGUEZ and the Maricopa County Public Defender's Office, Petitioners,**

**v.**

**STATE of Arizona, through its representative the Maricopa County Attorney, real party in interest, and the Superior Court of the State of Arizona, the Hon. David L. Grounds, Respondents.**

**No. 15057.**

Supreme Court of Arizona, In Banc.

May 11, 1981.

---

68

Ross P. Lee, Maricopa County Public Defender by John Foreman, Deputy Public Defender, Phoenix, for petitioners.

Charles F. Hyder, Maricopa County Atty. by Michael D. Ryan, Deputy County Atty., Phoenix, for respondents.

STRUCKMEYER, Chief Justice.

This special action challenges the trial court's refusal to permit John Foreman, a member of the Maricopa County Public Defender's Office, to withdraw as criminal defense attorney for Louis Anthony Rodriguez. This Court accepted jurisdiction and, believing that the defendant's right to effective assistance of counsel would be damaged while a written opinion was prepared, we ordered the trial court to allow the Maricopa County Public Defender's Office to withdraw and to appoint new counsel. We further suspended the time limits of Rule 8.2, Rules of Criminal Procedure, and directed that our written decision would follow.

Rodriguez, at the time of filing this petition, was under indictment for fifteen counts of sexual assault, sexual abuse, kidnapping, and first and second degree burglary. Since Rodriguez was indigent, the Superior Court appointed the Marciopa County Public Defender to represent him. One member of that office, John Foreman, was assigned the case. A defense to the charges against Rodriguez was his identification as a participant in the offenses.

In August 1980, another member of the Public Defender's Office was assigned to represent a person by the name of Frank Silva, who was also charged with numerous counts of sexual assault. Silva is not charged with any of the crimes for which Rodriguez was indicted and there is absolutely no indication that Silva has any information about the crimes for which Rodriguez stands accused or that any information concerning Rodriguez's activities was given by Silva to the Public Defender's Office. Rodriguez's counsel, Foreman, became aware that his office represented Silva in early September. He approached counsel representing Silva and inquired of Silva's physical appearance and the charges against Silva. Foreman states that this conversation was purposefully kept general and that it did not involve any privileged or confidential information. Foreman determined that Silva's appearance was similar to Rodriguez's. He therefore decided to call Silva as a defense witness and subpoenaed him for Rodriguez's trial. Foreman's purpose in calling Silva as a witness was to show the jury the similar appearance between the two men in order to impeach the witnesses' identifications of Rodriguez. Foreman advised Silva's counsel to withdraw from Silva's case. This was done, and the trial court appointed Silva counsel from other than the Public Defender's Office.

Thereafter, a hearing was held to determine if Silva could be required to appear at Rodriguez's trial. During this hearing, Foreman indicated that he might have to withdraw as counsel for Rodriguez because of his office's past representation of Silva. The next day, the Maricopa County Attorney moved to disqualify the entire Public Defender's Office from the representation of Rodriguez. After obtaining an informal ethics opinion from the State Bar that continued representation of Rodriguez would involve an appearance of impropriety, Foreman moved the court to be permitted to withdraw. Rodriguez opposed the withdrawal, objecting to any more delays in his trial and, additionally, for the reason he believed Foreman was an effective lawyer. Rodriguez told the court that if Foreman was allowed to withdraw, he would go to trial without counsel.

The trial court denied Foreman's motion. Instead, it appointed another attorney, stating:

"* * * to investigate only that aspect of the defense as it concerns Mr. Silva, and if he finds, as a result of that investigation, that there is something which may be admissible during the course of this trial, then [he] will handle that aspect of the case * * *.

* * * if he finds there may be something relevant or material, he is to present that evidence on behalf of Mr. Rodriguez, and also do any cross-examination in that regard."

Rodriguez objected to this arrangement, arguing that he wished Foreman to handle his entire defense and indicated that he would not cooperate with new counsel. Foreman also objected to this solution and filed this special action.

■ It should be first stated that the State did not have standing to disqualify the Public Defender's Office from participating in the defense of Rodriguez.

We said in *Knapp v. Hardy*, 111 Ariz. 107, 112, 523 P.2d 1308 (1974):

"That the county attorney has standing to object to a determination of indigency there can be no doubt, but once that indigency is determined the county attorney has no standing to object as to who will or will not represent the defendant or be associated as counsel. Not only does this strike at the very heart of the adversary system, but as we have previously stated:

'* * * for the prosecution to participate in the selection or rejection of its opposing counsel is unseemly if for no other reason than the distasteful impression which could be conveyed.' *State v. Madrid*, 105 Ariz. 534, 535, 468 P.2d 561, 562 (1970)."

No ethical duty was owed to the prosecution by either Foreman or the Public Defender's Office. See *State v. Garaygordobil*, 89 Ariz. 161, 164, 359 P.2d 753 (1961).

If the State believed an ethical violation was occurring, it should have followed the guidelines of the Code of Professional Responsibility:

"A lawyer possessing unprivileged knowledge of a violation of DR 1–102 should report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation." Rule 29(a), DR 1–103(A), Rules of the Supreme Court, 17A A.R.S.

■ Foreman, however, orally joined in the State's motion to disqualify the Public Defender's Office from any representation of Rodriguez, thus solving any standing problem. Defense counsel may move the court to withdraw if he believes his continued representation of a defendant will or is likely to result in a violation of a Disciplinary Rule.[1] Rule 29(a), DR 2–110(B)(2), (C)(2), Rules of the Supreme Court, 17A A.R.S. He must reveal any potential conflicts of interest to the defendant even though the conflict is not one which is likely to result in a violation of a Disciplinary Rule. See Rule 29(a), DR 5–101(A), DR 5–105, Rules of the Supreme Court, 17A A.R.S.; Standard 4–3.5, ABA Standards for Criminal Justice. If counsel believes an actual conflict exists, he must also promptly reveal it to the court. *State v. Davis*, 110 Ariz. 29, 31, 514 P.2d 1025 (1973).

Foreman's position is that he was faced with an incurable conflict of interest which compels him to withdraw. He urges that this conflict arose from the fact that he must zealously represent Rodriguez, but that in so doing might incriminate Silva, a former client of the Public Defender's Office.

An attorney owes a defendant representation which is both loyal and zealous. Rule 29(a), DR 5–101(A), DR 5–105, DR 7–101, Rules of the Supreme Court, 17A A.R.S.; Standards 4–1.1(b), 4–1.6 and 4–4.1, ABA Standards for Criminal Justice. This loyalty is superior to the lawyer's personal and other professional interests. It rises above the interests of third persons, including other clients, both past and present. EC 5–1, Code of Professional Responsibility. Zealous representation requires that an attorney do everything legally and ethically possible to gain an acquittal for a defendant. Rule 29(a), DR 7–101, Rules of the Supreme Court, 17A A.R.S.; see Standard 4–4.1, ABA Standards for Criminal Justice.

■ Here, Foreman owed both loyal and zealous representation to Rodriguez. So, if guilt could be shifted to someone other than Rodriguez, Foreman was under an ethical and moral obligation to do so. Yet, it would be unethical to shift Rodriguez's guilt to Silva while Silva was represented by the Public Defender's Office, because

---

1. "No attorney shall be permitted to withdraw after a case has been set for trial except upon motion accompanied by the name and address of another attorney, together with a signed statement by the substituting attorney that he is advised of the trial date and will be prepared for trial." Rule 6.3(c), Rules of Criminal Procedure, 17 A.R.S. Foreman's motion failed to meet this requirement since no substituting counsel was offered.

the Public Defender's Office also had a duty of loyalty to Silva. Rule 29(a), DR 5–105(B), Rules of the Supreme Court, 17A A.R.S.; EC 5–14, Code of Professional Responsibility; see ABA Informal Opinion 1418 (1978); cf. *State v. Davis,* supra (requiring a court-appointed counsel to represent a defendant and a codefendant after attempting to withdraw on ground of conflict of interest denied the defendant effective assistance of counsel). See *Allen v. District Court in and for Tenth Jud. Dist.,* 184 Colo. 202, 519 P.2d 351 (1974) (where public defender's office represents both defendant and prosecution witness, the office must be allowed to withdraw from representation of witness; no mention that office must also withdraw from defendant's case).

As stated, Silva is not charged with any of the crimes of which Rodriguez stands accused and there is no indication that Silva has any information about those crimes or that Silva gave any information concerning Rodriguez's activities to his public defender attorney. Foreman, in his memorandum accompanying his petition filed in this Court, says that he did not receive confidential information from sources within the Public Defender's Office. He also says that he scrupulously avoided examining Silva's file. Since Foreman did not obtain any confidential information about Silva's defense, his brief investigation of Silva on Rodriguez's behalf did not violate DR 4–101 requiring the preservation of confidences and secrets of a past or present client. Any subsequent investigation of Silva by Foreman would violate DR 4–101 only if Foreman thereafter used confidential information received by the Public Defender's Office as a result of its representation of Silva.

Hence, the appointment of separate counsel cannot cure the claimed ethical dilemma. Substitute counsel would still be in Foreman's position since, in investigating Silva, substituted counsel could neither interview Silva's former public defender nor obtain access to Silva's file. In this light, it is apparent that Foreman was not placed in an inextricable conflict between violating the duty of confidentiality and the duty of zealous representation. Other courts have also held under somewhat similar circumstances that a person in Rodriguez's position was not denied effective assistance of counsel. The test is whether there was undivided loyalty. See *United States v. Jeffers,* 520 F.2d 1256, 1263–1264 (7th Cir. 1975); *Olshen v. McMann,* 378 F.2d 993 (2nd Cir. 1967); *People v. Pineda,* 106 Cal.Rptr. 743, 30 Cal.App.3d 860 (1973); *Commonwealth v. Smith,* 362 Mass. 782, 291 N.E.2d 607 (1973).

In the case of *People v. Pineda,* supra, two men were arrested and charged with the robbery of a convenience store. Pineda was represented by Lucero, a public defender. The other, Warren, was appointed another attorney from the same public defender's office. Warren related certain matters to his counsel, but they were not communicated to Lucero. The charges against Warren were later dropped. At Pineda's trial, Lucero called Warren to the stand in an attempt to link him rather than Pineda to the robbery. Warren refused to testify, invoking his right against self-incrimination. Lucero moved for a mistrial and for the appointment of new counsel for Pineda, arguing that Warren's refusal was also based on the attorney-client privilege, and, thus, he was unable to effectively examine Warren. This motion was denied and Pineda was convicted. On appeal, Pineda claimed his counsel, Lucero, had a conflict of interest that prevented the giving of effective assistance of counsel. In affirming, the court found no conflict, saying:

> "The mere fact that Warren was previously represented by the same public defender's office at which Lucero worked does not, standing alone, give rise to an inference of any conflict of interest. On the contrary, in the absence of some affirmative showing that a particular deputy public defender has acquired confidential adverse information from a defendant from the files or other employees of the office, any claim of conflict of interest would be groundless." *People v.*

*Pineda,* 106 Cal.Rptr. at 746, 30 Cal. App.3d at 865.

Hence, we do not believe Foreman was compelled to withdraw under Rule 29(a), DR 2–110(B)(2) and (C)(2), Rules of the Supreme Court.

■ It has been suggested that DR 5–105(D) requires Foreman to withdraw from Rodriguez's defense. Arizona's version of that rule differs in wording from the ABA's Code of Professional Responsibility. Rule 29(a), DR 5–105(D), Rules of the Supreme Court, provides:

> "If a lawyer is required to decline employment or to withdraw from employment under DR 5–105, no partner or associate of his or his firm may accept or continue such employment."

This provision prevents an associate of a withdrawing counsel from accepting or continuing the employment. Foreman could not represent Silva after Foreman's associate in the Public Defender's Office withdrew. The provision does not have any relevancy to the question of whether Foreman must withdraw from the defense of Rodriguez because the Public Defender's Office withdrew from the representation of Silva.

Moreover, to require Foreman to withdraw because of Rule 29(a), DR 5–105(D), would not be consistent with our decision in *State v. Belcher,* 106 Ariz. 170, 472 P.2d 39 (1970). There, we reversed a conviction when the appellant's counsel also represented a codefendant who was to be tried separately. The appellant wished to call this codefendant as a witness, but his counsel disagreed and attempted to withdraw. The withdrawal was denied and appellant was convicted without the codefendant being called on his behalf. Reversing, we said:

> "A lawyer may represent codefendants until a conflict arises or can reasonably be foreseen. At that point independent legal advice must be provided for *one or the other.*" *Id.* at 171, 472 P.2d 39. (Emphasis added.)

*Accord, State v. Kruchten,* 101 Ariz. 186, 199, 417 P.2d 510 (1966); *Watson v. District Court in and for Fourth Jud.,* Colo., 604 P.2d 1165, 1168 (1980).

Even though the Disciplinary Rules do not require Foreman to move to withdraw, other considerations may allow a court to disqualify Foreman from representing Rodriguez.

■ It is urged that any confidential knowledge known to Silva's former counsel (public defender) is imputed to Foreman through the "vicarious disqualification" rule. The underpinnings of this rule are found in the duty not to disclose a former client's confidences and secrets, the duty of zealous and loyal representation, the ABA's version of DR 5–105(D),[2] and the general warning against the appearance of impropriety. In applying this rule, the inquiry is directed to whether the representation of the present client is "substantially related" to the representation of the former client. If it is, confidences and secrets known by the former client's lawyer are imputed to any associate and that associate is disqualified vicariously. *Silver Chrysler Plymouth, Inc. v. Chrysler Mot. Corp.,* 518 F.2d 751 (2nd Cir. 1975); *American Can Company v. Citrus Feed Co.,* 436 F.2d 1125, 1128–29 (5th Cir. 1971). See *State v. Latigue,* 108 Ariz. 521, 502 P.2d 1340 (1972); *Bicas v. Superior Court in and for Pima County,* 116 Ariz. 69, 567 P.2d 1198 (App.1977). Note, "Unchanging Rules in Changing Times: The Canon of Ethics and Intra-Firm Conflicts of Interest", 73 Yale L.J. 1058, 1060 (1964).

This rule attempts to avoid situations:

> "(1) where an attorney's conflict of interests in violation of Canons 5 and 9 of the Code of Professional Responsibility undermines the court's confidence in the vigor of the attorney's representation of his client, * * * or more commonly (2) where the attorney is at least potentially in a position to use privileged information

2. "If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner or associate, or any other lawyer affiliated with him or his firm

may accept or continue such employment." DR 5–105(D), Code of Professional Responsibility.

concerning the other side through prior representation, for example, in violation of Canons 4 and 9, thus giving his present client an unfair advantage [over the former client] * * *." *Bd. of Ed. of N. Y. City v. Nyquist,* 590 F.2d 1241, 1246 (2nd Cir. 1979). (Footnotes omitted.)

At this point we reach the issue of the appearance of impropriety which we think is determinative of this case. Under the view imputing knowledge of one attorney to others, attorneys and partnerships are generally disqualified by reason of disqualification of an attorney associated with them either on the basis of representation of an adverse interest or the possible disclosure of confidential information. The Arizona Court of Appeals has held that an attorney who as a partner, associate or employee may have been involved in the interchange of ideas and problems presented in the law firm carries the taint of disqualification to another law firm representing an adverse party, even though he did not personally handle the affairs of the other party and did not possess any of their confidential information. *Bicas v. Superior Court in and for Pima County,* supra.

The ABA, however, has criticized the concept of the appearance of impropriety in this language:

"It is fortunate that 'avoiding even the appearance of professional impropriety' was not made an element of the disciplinary rule, for it is too vague a phrase to be useful * * *, and lawyers will differ as to what constitutes the appearance of evil * * *. For the same reasons, the concept is of limited assistance as an underlying policy consideration. If 'appearance of professional impropriety' had been included as an element in the disciplinary rule, it is likely that the determination of whether particular conduct violated the rule would have degenerated from the determination of the fact issues * * * into a determination on an instinctive, *ad hoc* or even *ad hominem*, basis * * *."

ABA Formal Opinion 342, n. 17 (1975). See also, *Bd. of Ed. of N. Y. City v. Nyquist,* supra at 1246–1247. But we think

the determination of a fact issue does not always satisfy the moral concept often inherent in close decisions.

New York State's highest court, in *Cardinale v. Golinello,* 43 N.Y.2d 288, 401 N.Y. S.2d 191, 195, 372 N.E.2d 26, 30 (1977), put it this way:

"Accordingly, it is no answer that the lawyer did not in fact obtain any confidential information in connection with the first employment, or even that it was only other members of his firm who rendered the services to the client. Irrespective of any actual detriment, the first client is entitled to freedom from apprehension and to certainty that his interests will not be prejudiced in consequence of representation of the opposing litigant by the client's former attorney. (Drinker, Legal Ethics, pp. 109, 115.) The standards of the profession exist for the protection and assurance of the clients and are demanding; an attorney must avoid not only the fact, but even the appearance, of representing conflicting interests (*Rotante v. Lawrence Hosp.,* 46 A.D.2d 199, 361 N.Y.S.2d 372; *Edelman v. Levy,* 42 A.D.2d 758, 346 N.Y.S.2d 347)."

We note also that in *Schloetter v. Railoc of Indiana, Inc.* 546 F.2d 706, 709 (7th Cir. 1976), the court observed:

"The basic policies underlying any judicially-compelled withdrawal of counsel because of a potential conflict of interest can be found in Canons 4 and 9 of the ABA Code of Professional Responsibility. Canon 4 provides that 'a Lawyer Should Preserve the Confidences and Secrets of a Client,' and Canon 9 provides that 'a Lawyer Should Avoid Even the Appearance of Professional Impropriety.' Read together, the two canons indicate that an attorney *may* be required to withdraw from a case where there exists even an appearance of a conflict of interest." (Footnote omitted.)

In the instant case, the admonition of Canon 9, that a lawyer should avoid even the appearance of impropriety, is especially appropriate. Persons charged with crime

must have ultimate faith in their attorney and such faith may be slow to develop when the attorney is court-appointed and not retained. Without faith in counsel, the criminal defendant may not freely communicate information necessary to an adequate defense. We recognize the fact that the Public Defender's Office received no information about Rodriguez's alleged crimes from Silva. But we assume that office has received from Silva confidential information and secrets about himself and his activities. If the Public Defender's Office continues to represent Rodriguez and a confrontation with Silva developed at Rodriguez's trial, it is possible, even probable, that it would be to Silva's disadvantage. Such a result would make it appear that confidences and secrets of Silva were used to his disadvantage. This appearance could only hurt Silva's, his friends' and relatives', and even the general public's faith in the Public Defender's Office.

We therefore hold that because of the appearance of impropriety, Foreman and the Public Defender's Office should have been disqualified. Our order heretofore entered directing the trial court to permit the Maricopa County Public Defender's Office to withdraw from Rodriguez's defense is confirmed.

CAMERON and GORDON, JJ., concur.

HOLOHAN, Vice Chief Justice (specially concurring):

Although I agree with the result reached, I do not agree with the rationale of the majority opinion.

At the onset, I believe that the public defender was totally correct and justified in seeking to be relieved of his representation of Rodriguez. The occurrences in the public defender's office during the simultaneous representation of Rodriguez and Silva created a clear conflict of interest—not just an appearance of impropriety.

The relationship of the public defender's office in the representation of indigent defendants should be no different than the representation of any client by a private law firm. Apparently this principle is not accepted in California, at least as I read *People v. Pineda*, 106 Cal.Rptr. 743, 30 Cal. App.3d 860 (1973). In my judgment, the correct position is that stated by the Colorado Supreme Court in *Allen v. District Court In and For Tenth Jud. Dist.*, 184 Colo. 202, 519 P.2d 351 (1974). The Colorado Supreme Court stated that "the knowledge, or position gained by any member of the staff (public defender) would be attributed to the other. DR 5–105(D)." Thus, in *Allen* the public defender's office was found to have a conflict of interest between two defendants, one of whom was to be a witness against the other. This conflict was found even though the crimes charged against the defendants were in no way related to each other. The fact, however, that a lawyer must interview his client to determine all relevant facts presents the conflict, if the information gained by one deputy (partner) is imputed to the members of the staff (other partners). *But cf.: Watson v. District Court In and For Fourth Jud. Dist.*, Colo., 604 P.2d 1165 (1980).

It is my view that the principle set forth in *Allen, supra,* is not only legally correct and sound, but it is vital to the justice system. Allowing lawyers to pick and choose between clients is a pernicious concept. I had thought that the ethics of the profession and common sense had caused such a concept to be rejected as totally incompatible with the role of an attorney.

The cardinal point in this case is the fact that both defendants, Silva and Rodriguez, were clients of the public defender's office at the same time. We are not dealing with a former client situation. The relationship of the public defender with Silva was the same fiduciary relationship which the members of the office had with Rodriguez. They were both clients of the office and each entitled to the undivided allegiance and loyalty of their attorneys. As events occurred, the interests of Rodriguez and

Silva were brought into a direct conflict which placed the public defender's office in an irreconcilable conflict with the interests of Silva.

The public defender's office had no choice but to withdraw from both cases. *See Cinema 5, Ltd. v. Cinerama, Inc.,* 528 F.2d 1384 (2d Cir. 1976); *Bicas v. Superior Court In and For Pima Cty.,* 116 Ariz. 69, 567 P.2d 1198 (App.1977). The trial court should have allowed the public defender's office to withdraw, and I, therefore, concur in the result reached in this case.

HAYS, Justice (specially concurring):

I concur in the special concurrence of HOLOHAN, V. C. J.