763 P.2d 536
**STATE of Arizona, Appellee,**

v.

**Brian BLACKHOOP, Appellant.**

**No. 1 CA–CR 11721.**

Court of Appeals of Arizona,
Division 1, Department A.

June 23, 1988.
Petition for Review Granted in Part Nov.
22, 1988.*

* Gordon, C.J., of the Supreme Court, did not participate in the determination of this matter.

## OPINION

JACOBSON, Presiding Judge.

We must decide whether a procedure utilized by the trial judge to select alternate jurors, which resulted in the only two members of the jury who were of the same race as the defendant being named alternates, was improper.

The defendant, Brian Blackhoop, a native American, was charged by information with sexual assault, a class 2 felony, and criminal trespass, a class 6 felony. The defendant's jury trial resulted in him being found guilty as charged. He was sentenced to the presumptive terms of seven years imprisonment on the sexual assault conviction and one and one-half years imprisonment on the criminal trespass conviction, with both terms to run concurrently. The defendant has timely appealed.

The facts, taken in a light most favorable to sustaining the verdict, are as follows. On October 20, 1986, the defendant entered the victim's home and walked into her bedroom. He fondled the victim, who was still asleep. When the defendant put his penis into the victim's mouth, the victim woke up and ran from the bedroom. The victim's son, a friend of the defendant, found the defendant in his mother's bedroom getting dressed. When the victim phoned the police, the defendant ran from the victim's home. Shortly thereafter, the defendant was arrested and questioned by the police. At trial, the sole defense was on the basis of consent.

On appeal, the defendant raises the following issues:

(1) Did the trial judge err in denying the defendant's motion for judgment of acquittal?

(2) Did the trial court err in allowing the prosecution to use a peremptory strike of the only black juror in the venire panel?

(3) Did the trial court err in the selection of the two alternate jurors?

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div. and Joseph T. Maziarz, Asst. Atty. Gen., Phoenix, for appellee.

Gary Peter Klahr, Phoenix, for appellant.

## DIRECTED VERDICT FOR ACQUITTAL

At the close of the state's case-in-chief, the defendant moved for a judgment of

acquittal, contending that the state failed to prove all the elements of sexual assault. The trial judge tentatively agreed, claiming that there had been insufficient proof of actual contact, but nevertheless denied the motion based on his belief that the jury could infer actual contact from the evidence heard during the state's case-in-chief, coupled with evidence which would probably be presented during the defense. The defendant now maintains that Rule 20, Rules of Criminal Procedure, requires that if the trial court believes that the state has not proved all the elements of the offense beyond a reasonable doubt, the trial judge must grant a motion for judgment of acquittal. It is also contended that the trial court "reserved" decision on the directed verdict, contrary to Rule 20(a). The state maintains first, that any error on this issue was waived by defendant's failure to renew his motion for judgment of acquittal at the end of the trial, and second, that there was sufficient proof of oral sexual contact to deny the motion for judgment of acquittal.

During the state's case-in-chief, the victim testified only that the defendant had put "something" in her mouth. Upon the defendant's motion for judgment of acquittal, the trial court acknowledged that he felt that the state had not provided sufficient evidence of penetration. However, in denying the defense's motion, the trial court stated that the defendant would, of necessity, provide this element in presenting the defense of consent.

I don't think that the terminology used in describing Mr. Blackhoop's statements to the police are substantial enough at this point for the Court to find that there was actual physical penetration of the mouth by his penis.

However, since the defense in this case is consensual sexual contact, and since it has already been indicated to me both on and off the record that Mr. Blackhoop intends on testifying in his own behalf, I find it very difficult in giving a judgment of acquittal as to sexual assault and amending the charge to attempted sexual assault at this point in time, because I don't know what his testimony is going to be. And if it stays within the bound-

aries of what the police allege that his statements are going to be, based upon prior statements made to the police—for example, if he gets up here on the stand and says, yes, I placed it in her mouth, I am then in the position of sending it to the jury solely on the basis of whether he is guilty of sexual assault or not guilty of sexual assault, with no lesser and included charges....

■■■ This act of waiting for the defense to supply a necessary element of the state's case amounts to a "reservation" of decision on the motion for judgment of acquittal, which is clearly prohibited by Rule 20(a), even though the trial court formally denied the motion. *See State v. Tucker*, 26 Ariz.App. 376, 378, 548 P.2d 1188, 1190 (1976) (the purpose of the rule prohibiting reservation on motion for acquittal is to avoid forcing a defendant into going forward with his own evidence when the state's case is insufficient, thus risking convicting himself). Thus we agree that the trial court erred if, in fact, the state had failed to prove all the elements of the crime in its case-in-chief. Substantial evidence does not require, as defendant asserts, "proof beyond a reasonable doubt" but rather such proof "as reasonable minds could have concluded that defendant committed the crime." *State v. LaGrand*, 138 Ariz. 275, 280, 674 P.2d 338, 343 (App. 1983). The record contains such evidence. In addition to testimony from the victim herself, Officer Roberts of the Phoenix Police Department testified that on the night of the incident, the victim told her that the defendant had put his penis in her mouth. Police Officer Polk, who questioned the defendant on the night of the offense, testified that the defendant admitted to him that the victim had performed oral sex on him. In light of the foregoing, we do not find that the defendant was entitled to a directed judgment for acquittal.

## PEREMPTORY STRIKE OF JUROR

■■■ During its peremptory strikes, the state struck the only member of the jury panel who was black. The defense counsel called this situation to the attention

of the trial judge and claimed error under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *Batson* stands for the proposition that, while a peremptory strike may usually be exercised with no explanation or cause, a violation of a criminal defendant's rights to equal protection occurs when the state systematically excludes members of the defendant's race from the jury. *Batson,* 476 U.S. at 94–98, 106 S.Ct. at 1722–23. Under *Batson,* the defendant has the burden of establishing a *prima facie* case that the state struck certain jurors solely on the basis of their race. *Batson* at 94–98, 106 S.Ct. at 1722–23. Once this *prima facie* showing has been met, the burden switches to the state to provide a racially-neutral explanation for its conduct. *Batson* at 96–98, 106 S.Ct. at 1723. In the present case, the trial court required the state to explain the strike. The state explained that it exercised its peremptory strike upon the black juror because "he did not really understand the concept of reasonable doubt." The trial court was satisfied with this explanation and ruled that it was racially neutral. The defendant argues that the trial judge erred in accepting this explanation because the record shows that any misunderstanding the juror may have had about the concept of reasonable doubt was cleared up during the selection process, and also that, if such misunderstanding existed, the state would have stricken the juror for cause. The state responds that first, the defendant has no standing to raise the *Batson* issue, and second, that the defendant has not made a proper *prima facie* case under *Batson.* We need not address these issues as we find that the trial court's determination that the strike was racially neutral is supportable.

The defendant's claim of a racially inspired strike is based on his theory that stated reason for the strike (that the juror did not understand the concept of reasonable doubt) if true, would have given rise to a strike for cause. We disagree.

■ A prosecutor's explanation of a peremptory strike under *Batson* need not rise to the level of justification to exercise a challenge for cause, *State v. Jackson,* 157 Ariz. 589, 760 P.2d 589 (App.1988) but must only be race-neutral. The fact that the prosecutor felt that the juror was confused by the concept of reasonable doubt was racially-neutral. Furthermore, similar reasons have been held to satisfy the prosecutor's burden under *Batson. See State v. Jackson, supra,* at 592, 760 P.2d at 592 (inability to pay close attention to proceedings); *State v. Castillo,* 156 Ariz. 323, 751 P.2d 983 (App.1987) (hesitancy and apparent lack of understanding of the proceedings). As stated in *Batson,* peremptory challenges are permissible 'for any reason at all, as long as that reason is related to the outcome of the case.' *Batson* 476 U.S. at 89, 106 S.Ct. at 1718–19.

Because we find that the reason given by the prosecutor was supported by the record, racially-neutral, and related to the outcome of the case, we hold that the trial court did not abuse his discretion in accepting the prosecutor's explanation. *See State v. Jackson, supra,* (trial court's determination of sufficiency of prosecutor's explanation to be given great deference).

## SELECTION OF ALTERNATE JURORS

■ In his motion for new trial, the defendant claimed that the trial judge erred in the manner of selecting the alternate jurors. At trial, the judge made what appeared to be a random selection of the alternate jurors. However, this selection resulted in the only two Native Americans on the jury becoming alternate jurors. The defendant is a Native American. The defendant contends that the procedure utilized violated Rule 18.5(h), Arizona Rules of Criminal Procedure.

■ Rule 18.5, Arizona Rules of Criminal Procedure, 17 A.R.S. mandates that the *clerk* shall determine the juror or jurors to be designated as alternates by lot, not the trial judge. Thus, we agree that the trial judge erred by deviating from the Rules of Criminal Procedure. Normally, however, technical errors in jury selection do not require a new trial. *State v. Eisenlord,* 137 Ariz. 385, 392, 670 P.2d 1209, 1216 (App.1983):

A conviction will not be set aside due to mere technical errors or defects in the record which do not affect a defendant's substantial rights. (Citation omitted.) This is particularly true regarding the 'rules of law relative to the selection and formation of juries, our decisions being to the effect that a defendant is not entitled to be tried by any particular jury, but merely by one which is fair and impartial.' (Citation omitted.) The defendant is not entitled to a perfect jury impaneled through a perfect system. (Citation omitted.)

*See also State v. Zimmer,* 106 Ariz. 166, 169, 472 P.2d 35, 38 (1970).

In the present case, however, even if the trial judge's selection process was completely fair and random, it resulted in removing from the final deliberative process the only two jurors who were of the same race as the defendant. The odds of this occurring by chance are so great that at least there is a strong appearance of impropriety which must be avoided. *State v. Latique,* 108 Ariz. 521, 502 P.2d 1340 (1972). Finally, in this case the defendant has alleged a specific source of prejudice due to the improper procedure. Included in the record is a sworn affidavit by one of the alternate jurors that he would have voted for acquittal. Although affidavits may not be used to impeach a jury's verdict and we cannot say what this juror would have done after group deliberation, this alleged prejudice, combined with the appearance of impropriety necessitates a new trial. Accordingly, the matter is reversed and remanded.

HAIRE and GREER, JJ., concur.