797 P.2d 734
**Michael TURBIN, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF NAVAJO, The Honorable J.M. Abbey, a judge thereof, Respondent Judge,**

**STATE of Arizona, Real Party in Interest.**

**No. 1 CA–SA 90–044.**

Court of Appeals of Arizona,
Division 1, Department A.

Aug. 30, 1990.

---

Thompson, Dalton & DeRose by Sanford J. Edelman, Lakeside, for petitioner.

Melvin R. Bowers, Jr., Navajo County Atty. by Joel H. Ruechel, Deputy County Atty., Holbrook, for real party in interest.

## OPINION

CLABORNE, Judge.

This special action challenges the trial court's refusal to disqualify the Navajo County Attorney's Office from prosecuting petitioner Michael Turbin. We previously accepted jurisdiction and granted petitioner his requested relief, adding that our opinion would follow. The issue is whether a prosecutor's office must be disqualified from prosecuting an accused when the accused's counsel leaves the role of defense attorney to join the office that is conducting the prosecution.

The Navajo County Grand Jury indicted petitioner on charges of attempted first-degree murder, aggravated assault, endangerment and criminal damage. On May 1, 1989, the trial court appointed attorney Ralph Hatch to represent petitioner.

Hatch withdrew as petitioner's attorney of record on October 23, 1989, in order to rejoin the Navajo County Attorney's office. He is presently one of its prosecutors.

Petitioner's new attorney, Sanford Edelman, moved to disqualify the entire Navajo County Attorney's office from prosecuting petitioner on the grounds that Hatch's prior representation of petitioner in the very case for which he was being prosecuted, disqualified the entire prosecutor's office.

The trial court denied the motion to disqualify, ruling that, absent evidence of any communication and discussion by Hatch with other members of the county attorney's office about the pending prosecution, there was no conflict of interest. The court concluded that Hatch had not discussed the case with anyone in the county attorney's office and, accordingly, refused to disqualify the entire office. The court further concluded that, because of the small size of Navajo County and because the movement of attorneys between offices had become commonplace, a finding of conflict of interest in this case would "paralyze" the county's entire judicial system. Petitioner then filed this special action challenging the trial court's decision.

The state admitted that Hatch "actively interviewed witnesses, discussed the case with Mr. Turbin and negotiated with the Navajo County Attorney." Hatch alone represented petitioner throughout discovery and had pretrial discussions and negotiations with the prosecutor up until the time he assumed his position with the county attorney's office. The record is clear that once Hatch became a deputy county attorney, he discussed the case with no one, did not review the state's file and had no contact in any way with the prosecution of the case against petitioner. At the time the motion was filed, the Navajo County Attorney's office was composed of the elected county attorney and six or seven deputies.

The foundation of petitioner's argument is the appearance of impropriety. He contends that the appearance of impropriety is so great that disqualification of the entire

office (vicarious disqualification) is required. The state's response is that the appearance of impropriety is no longer the standard used to decide a motion to disqualify an entire office, but that petitioner is required to show prejudice before disqualification can be granted.

Our supreme court established the standard by which to decide a motion to disqualify a prosecutor's office in *State v. Latigue*, 108 Ariz. 521, 502 P.2d 1340 (1972). There, the court held that the appearance of impropriety was enough to preclude the entire Maricopa County Attorney's office from prosecuting the defendant. *Id.* at 523, 502 P.2d at 1342. The facts involved a deputy public defender, who had acted as the defendant's co-counsel, accepting a position as the chief deputy county attorney while the defendant's prosecution was pending. *Id.* at 522, 502 P.2d at 1341. While representing the defendant, the chief deputy had acquired confidential information and had access to all records and information pertaining to the defense. *Id.* Although the chief deputy took no part in the prosecution, the court concluded that disqualification of the entire prosecutor's office was required. *Id.* at 523, 502 P.2d at 1342.

One of the factors considered by the *Latigue* court was the former defense counsel's position in the prosecutor's office. *Id.* As chief deputy, the attorney had supervisory powers and duties over the assistant county attorney who was prosecuting the defendant. *Id.* Moreover, said the court, "if the County Attorney's Office is functioning efficiently, its staff has frequent meetings to discuss cases, and even without meetings, staff members often talk about their cases with one another." *Id.*

However, the court did not rest its decision solely on the former defense counsel's position at the county attorney's office. Even if the attorney were not the chief deputy, the "office would have to divorce itself from the prosecution ... because even the appearance of unfairness cannot be permitted." *Id.*

Petitioner relies heavily on *Latigue* as support for his position that the appear-

ance of impropriety is the appropriate standard to use when deciding a motion to disqualify. The state responds by correctly pointing out that our ethical rules have changed since then. Prior to *Latigue*, vicarious disqualification was governed by DR 5–105(D) and Canon 9 of the Code of Professional Responsibility. The former provided that "if a lawyer is required to decline or withdraw from employment ... no partner, or associate, or affiliate ... may accept or continue such employment," while the latter provided that "a lawyer should avoid even the appearance of impropriety."

In 1979, Arizona recognized that disqualification of an entire office is not justified in all cases. In *State v. Smith*, 123 Ariz. 231, 599 P.2d 187 (1979), a deputy Maricopa County attorney had worked at the public defender's office when that office represented the defendant on an unrelated criminal charge. The defendant moved to disqualify the county attorney's office on the ground that the deputy's former employment with the public defender's office created a conflict of interest. *Id.* at 234, 599 P.2d at 190. The court concluded that disqualification was not necessary because the deputy county attorney "did not himself represent [the] defendant in the prior case ..." and because the charges on which the prosecution was based were different from those in the prior criminal proceeding. *Id.* at 235, 599 P.2d at 191.

Today, our ethical rules distinguish between private law firms and government law offices for purposes of vicarious disqualification. Private law firms are guided by ER 1.10, which provides that when a lawyer becomes associated with a firm, the firm may not knowingly represent a client in the same or a substantially related matter in which the lawyer previously participated when doing so involves a material risk of violating the rules against disclosure of a former client's confidential information. 17A A.R.S. Sup.Ct. Rules, Rules of Professional Conduct, Rule 42, ER 1.10(b). Government attorneys, on the other hand, are guided by ER 1.11(c), which prohibits a government lawyer from partic-

ipating in a matter in which the lawyer participated personally and substantially while in private practice. 17A A.R.S. Sup.Ct. Rules, Rules of Professional Conduct, Rule 42, ER 1.11(c). Unlike ER 1.10, ER 1.11(c) does not disqualify the remaining attorneys in a government office when one of its members is prevented from participating in the matter. 17A A.R.S. Sup.Ct. Rules, Rules of Professional Conduct, Rule 42, ER 1.11(c), comment.

The ABA Committee on Ethics and Professional Responsibility explained the reason for treating private and public law firms differently for purposes of vicarious disqualification in Formal Opinion 342 (1975):

> The relationships among lawyers within a government agency are different from those among partners and associates of a law firm. The salaried government employee does not have the financial interest in the success of departmental representation that is inherent in private practice.... The channeling of advocacy toward a just result as opposed to vindication of a particular claim lessens the temptation to circumvent the disciplinary rules through the action of associates.... Although vicarious disqualification of a government department is not necessary or wise, the individual lawyer should be screened from any direct or indirect participation in the matter, and discussion with his colleagues concerning the relevant transaction or set of transactions is prohibited by those rules.

62 A.B.A.J. 517 (1976).

Many jurisdictions seem to look to whether the defendant has been prejudiced by the continued prosecution; if there is no prejudice shown, disqualification of the entire prosecutor's office is not necessary, provided that there is "effective screening." *State v. McKibben,* 239 Kan. 574, 722 P.2d 518 (1986), and cases cited. These jurisdictions look at each case and attempt to determine whether professional confidences have been breached and, if so, whether prejudice to the defendant resulted. They also consider whether the defendant's former attorney participated in any

manner in the prosecution. If no prejudice has resulted, then disqualification is unnecessary.

It is the state's contention that, with the change in our ethical rules, the American Bar Association's opinion concerning the difference between private and governmental practice, and the number of jurisdictions which follow this approach, *Latigue* has been eroded. We disagree. Our reasons follow.

We begin by defining the role of a prosecutor in our criminal system. He represents the sovereign whose obligation is to govern impartially and whose chief object is justice. Public confidence in the criminal justice system is maintained by assuring that it operates in a fair and impartial manner. This confidence is eroded when a prosecutor has a conflict or personal interest in the criminal case which he is handling. *Latigue,* 108 Ariz. at 523, 502 P.2d at 1342.

We reject the state's suggestion that the prosecutor's office can never be disqualified unless the defendant can show that actual prejudice exists as a result of his former attorney joining that office. Two considerations weigh against this approach. First, in many instances actual prejudice may exist but may be extremely difficult for the defendant to prove. As the Colorado Court of Appeals observed in *People v. Stevens,* 642 P.2d 39, 41 (Colo.App.1981):

> A defendant should not be forced to attempt to prove that there was *actual* indiscretion or impropriety. Evidence of such conduct, being under the control of the prosecution, would be well-nigh impossible for a defendant to bring forth. [Emphasis in original.]

While we do not think that the defendant can be excused from demonstrating prejudice, such proof should not be essential to disqualification. We also suggest that, as a practical matter, if a defendant were required to show prejudice he might, in some cases, be forced to disclose a confidential communication he made to his former lawyer.

The second consideration that militates against the state's approach is that it fails

to give *any* weight to the principle that criminal prosecutions must appear fair, as well as actually be fair. As our supreme court observed in *Latigue:*

> What must a defendant and his family and friends think when his attorney leaves his case and goes to work in the very office that is prosecuting him? Even though there is no revelation by the attorney to his new colleagues, the defendant will never believe that.

108 Ariz. at 523, 502 P.2d at 1342.

In *Alexander v. Superior Court*, 141 Ariz. 157, 685 P.2d 1309 (1984), our supreme court held that when considering a motion for disqualification based upon the appearance of impropriety, the trial court should consider: (1) whether the motion was made for purposes of harassment; (2) whether the party seeking disqualification will be damaged if the motion is not granted; (3) whether alternative solutions exist, or is the proposed solution the least damaging possible under the circumstances; and (4) whether the possibility of public suspicion outweighs any benefits that might accrue due to continued representation. *Id.* at 165, 685 P.2d at 1317.

In *Gomez v. Superior Court*, 149 Ariz. 223, 717 P.2d 902 (1986), our supreme court continued to rely on the "appearance of impropriety" in evaluating attorney conduct, while recognizing some weakening of this concept by the new Rules of Professional Conduct. Nothing in this case requires us to discard *Latigue* or *Alexander*. *See Sellers v. Superior Court*, 154 Ariz. 281, 742 P.2d 292 (App.1987).

We hold today that the appearance of impropriety which was so thoroughly discussed in *Latigue*, still has a definite place in the balancing test the trial court must apply in resolving the question of disqualification. Actual prejudice, or the lack of it, is but one facet of whether a fair prosecution is endangered by the appearance of impropriety. While it is impossible to formulate a bright line rule in this area, the trial court should consider not only the requirements set forth in *Alexander*, but also any showing of prejudice or the lack of it.

However, in this case, given the severity of the charges, the apparent relative simplicity of the case, the small number of lawyers in the prosecutor's office, the fact that Hatch is employed to work on criminal matters, the length of time that Hatch represented the defendant, the vigor of Hatch's representation during which he actively interviewed witnesses, discussed the case with his client, and negotiated with the county attorney, and the unquestioned fact that the motion to disqualify was not brought for purposes of harassment, we believe that it was an abuse of discretion not to have granted the defendant's motion. Although we are sympathetic with the trial court's concerns, we do not believe that disqualification in this case would produce the dire results predicted by the trial court.

Our order disqualifying the Navajo County Attorney's office is reaffirmed.

EHRLICH and KLEINSCHMIDT, JJ., concur.