829 P.2d 1241

The STATE of Arizona, ex rel., Richard M. ROMLEY, Maricopa County Attorney, Petitioner,

v.

The Honorable Robert L. GOTTSFIELD, judge, the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent.

Oreste FULMINANTE, Real Party in Interest.

No. 1 CA-SA 91-181.

Court of Appeals of Arizona, Division 1, Department B.

Feb. 13, 1992.

As Corrected Feb. 14, 1992.

Review Denied June 2, 1992.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and Richard M. Romley, Maricopa County Atty. by Jessica Gifford Funkhouser, Deputy County Atty., Phoenix, for petitioner.

Dennis C. Jones, Phoenix, for real party in interest.

## OPINION

CLABORNE, Judge.

The State of Arizona petitioned this court for special action relief from a superior court order disqualifying the entire Maricopa County Attorney's office from prosecuting Oreste Fulminante for first-degree murder. We took jurisdiction and granted relief and reversed the trial court's order disqualifying the office of the Maricopa County Attorney from prosecution of Mr. Fulminante. We indicated that a written opinion would follow. This is that opinion.

This special action again raises the specter of disqualification of a prosecutor's entire office because of the actions of one of its deputies.

On May 1, 1991, Oreste Fulminante ("Fulminante"), who was charged with first-degree murder by the Maricopa County Attorney, moved to disqualify the entire office of the Maricopa County Attorney because a member of that office, Lyn Kane ("Kane"), had been associated with the defense attorney, Francis Koopman ("Koopman"), when Koopman represented the defendant Fulminante through his first criminal trial on the same charge. At the time the motion to disqualify was filed, Kane was employed in the vehicular crimes division of the Maricopa County Attorney's office. At a hearing on the motion to disqualify, both Koopman and Kane testified.

The trial court gave the following reasons for its decision.

By way of explanation, the Court believes that the Office of the Maricopa County Attorney should be disqualified because Mr. Koopman admitted that he talked about witnesses and the weaknesses and strengths of witnesses in general with Mr. Kane (T.30); that he may have "discussed certain facts concerning the case but in a conversational type thing and not in seeking advice or revealing anything that Mr. Fulminante had said to me" (30); that he shared his mental impressions and thoughts about certain witnesses in the case with Mr. Kane (33); and accordingly, the Court is of the view there was a "potential for the use

of privileged and confidential information"; and, furthermore, that there is an appearance of impropriety in this matter sufficient to require the office of the Maricopa County Attorney to be disqualified. This Court specifically rejects the State's view that the Office of the Maricopa County Attorney should only be disqualified if Mr. Kane, who is now with that office and who was formerly in a professional affiliation with Mr. Koopman, personally or substantially represented the Defendant. See *Gomez, Turbin, Latigue,* and *Bicas.*

It appears from the entire record that the legal relationship between Kane and Koopman was one of sharing office space, letterhead, receptionists, and the like. There is no evidence that Kane, although a partner of Koopman's for a short time, gained any information concerning the Fulminante case from the association.

There is no question that Kane did not file or sign pleadings concerning the case, did not interview or talk to witnesses who were or might be involved in the case, knew nothing about trial strategy concerning the prosecution or defense of the case, did not share confidences with Koopman about the case, and knew nothing about what Fulminante might have told Koopman about the case. A fair reading of Koopman's testimony would indicate that the most that could be said is that Koopman *may* have talked with Kane about his trip to interview a witness in New York and *may* have talked very generally about Koopman's impressions of that witness.

The record reflects that Kane's testimony was unequivocal. He said he never discussed anything concerning strategy, witnesses or confidences concerning either the Fulminante defense or any other "contract" case that Koopman was defending as part of his public defender contract.

The Maricopa County Attorney's office has about 150 deputies, and Kane was the chief of the vehicular crimes unit supervising from ten to twenty attorneys. He had nothing to do with the prosecution of homicides and was not the supervisor of the prosecutor in charge of Fulminante's case.

The record does not reflect that Fulminante suffered any prejudice as a result of the contact between Kane and Koopman.

The size of a prosecutor's office has some bearing on the question of vicarious disqualification. The size of the office would impact the likelihood of contact between the prosecutor and the defense counsel. Here it is clear that Kane was in a different unit, separate and apart from the homicide prosecutions, and had no contact with that section of the office.

In determining whether the trial court abused its discretion in disqualifying the entire staff of the prosecution because of the relationship between Kane and Koopman we should examine the latest decision which wrestled with this problem. In *Turbin v. Superior Court*, 165 Ariz. 195, 797 P.2d 734, we held that the facts justified a trial court in disqualifying an entire county attorney's office. In coming to this conclusion, we examined the standard set forth in *State v. Latigue*, 108 Ariz. 521, 502 P.2d 1340 (1972), and *State v. Smith*, 123 Ariz. 231, 599 P.2d 187 (1979). We also discussed the difference between private and public law firms as it relates to disqualification of an entire public office because of the acts of a single member (vicarious disqualification). *See Turbin*, 165 Ariz. at 197–98, 797 P.2d at 736–37. Finally, we reviewed *Alexander v. Superior Court*, 141 Ariz. 157, 685 P.2d 1309 (1984), which set forth several considerations which should be used when making a decision concerning disqualification.

■ In attempting to balance the interests of the state and the defendant, the appearance of impropriety is important. However, along with that element, we should look to whether the motion is made for harassment, whether the party seeking disqualification will be damaged if the motion is not granted, whether there are alternative solutions to disqualification which would be less damaging to the parties, and whether the possibility of public suspicion outweighs any benefits that might accrue due to continued representation. *Id.; Alexander*, 141 Ariz. at 165, 685 P.2d at 1317. We consider the severity of the charges,

the complexity of the case against the defendant, the number of lawyers in the prosecutor's office, the role that the deputy county attorney had both with the defendant before the prosecution and thereafter, and how deeply the prosecutor was involved in the prior and present prosecution. When one looks at the total record in this case the contact, if any, was not significant. Kane simply had no association with Fulminante of any meaningful kind, and certainly was not privy to any statements made by Fulminante to his lawyer. What knowledge existed concerning the participants in the case was insignificant. It was on a total basis that we came to the conclusion that we did in *Turbin*.

In deciding issues of vicarious disqualification, we accurately said in *Turbin* that it is impossible to formulate a bright-line rule. It was the trial judge's feeling that the disqualification of the entire office was appropriate given the close association between Koopman and Kane, the testimony of Koopman concerning general discussions of some sort concerning witnesses in the case, and the severity of the charges.

Yet, we do not find any evidence in the record that specific confidences were shared, that the court considered alternative solutions which might have been less onerous than disqualification of an entire public office, that the court considered the position of Kane in relation to the size of the office disqualified, whether Kane actually participated in the defense of Fulminante, or the simplicity or complexity of the case to be tried. Also, the record reveals no evidence concerning whether any actual prejudice would result from a failure to completely disqualify the entire prosecution office. Rather, the record can only support the conclusion that no prejudice was suffered by the defense, that Kane was not a supervisor of the prosecutor of Fulminante, that Kane was in a different section than the one charged with prosecuting homicides, that the size of the county attorney's office was large, and that no damage would result to the defense if the entire office was not disqualified. On balance, the appearance of impropriety was slight in

view of the other elements that should have been considered. We feel a disqualification of an entire public office the size of the Maricopa County Attorney's was an abuse of the trial court's discretion.

McGREGOR, P.J., and TAYLOR, J., concur.