908 P.2d 37

STATE of Arizona ex rel. Richard M. ROMLEY, Maricopa County Attorney, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, in and for the COUNTY OF MARICOPA, the Honorable Michael D. Ryan, a judge thereof, Respondent Judge,

Doll Marie PEARSON; Mike Hill Miller; Susanne M. Schermerhorn; John Joseph Kempsey; Michael Kirk Nicholson; Dwayne A. Blevins; Joseph William Nessinger; Rudy Walker; Roger Tyrone Porter; Carlos Blevins; Herbert Allen Kempf; Robert Rivera Medina; Salvador Heredia; Dennis Owens; Jackie Wayne Epperson, Real Parties in Interest.

No. 1 CA–SA 95–0185.

Court of Appeals of Arizona,
Division 1,
Department C.

Nov. 2, 1995.

Review Denied Dec. 19, 1995.*

---

* Zlaket, J., of the Supreme Court, voted to grant the Petitions for Review and to hear oral argument.

Dean W. Trebesch, Public Defender by Barbara L. Spencer, Deputy Public Defender, Phoenix, for real party in interest Epperson.

Tonya J. McMath, Phoenix, for real party in interest C. Blevins.

Treasure L. VanDreumel, Phoenix, for remaining real parties in interest.

## OPINION

SULT, Judge.

The State of Arizona petitions this court for special action relief from a superior court order disqualifying the entire Maricopa County Attorney's Office ("MCAO") from prosecuting the fifteen defendants involved in this action as real parties in interest. By previous order we accepted jurisdiction because petitioner has no plain, speedy, or adequate remedy by appeal and because the issue raised is of statewide importance and likely to recur. *State ex rel. Romley v. Superior Court*, 181 Ariz. 378, 380, 891 P.2d 246, 248 (App.1995); *see also State ex rel. Collins v. Superior Court*, 129 Ariz. 156, 159, 629 P.2d 992, 995 (1981).

From September 1, 1994 until June 12, 1995, Jeff Rueter was an associate for the Law Office of Treasure L. VanDreumel. Rueter's responsibilities included meeting with clients, drafting pre-trial motions, conducting pre-trial witness interviews, and negotiating plea offers with prosecuting agencies, including MCAO. In each of the cases named in this petition,[1] the trial court found that Rueter was counsel of record, discussed the merits of the case with the defendant, and received confidential information. In many of these cases, he attempted to negotiate a plea agreement; in others, he conducted a preliminary hearing or interviewed witnesses.

On June 12, 1995, MCAO hired Rueter as a deputy county attorney. He completed a

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and Richard M. Romley, Maricopa County Attorney by Richard L. Nothwehr, Deputy County Attorney, Phoenix, for Petitioner.

---

1. In CR 95–00137, Roger Porter and Carlos Blevins are co-defendants, as are Dennis Owens and Jackie Epperson in CR 95–02906. Rueter represented only Porter and Owens. However, C. Blevins and Epperson are real parties in interest because the trial court disqualified MCAO from prosecuting them "solely for reasons of judicial economy and prosecutorial efficiency and to avoid issues presented in *State v. Master* [135 Ariz. 560, 663 P.2d 244 (App.1983)] and *State v. Rupp* [120 Ariz. 490, 586 P.2d 1302 (App.1978)]." The state has not contested MCAO's disqualification on these grounds.

five week training program and was assigned to the Pretrial Bureau, becoming responsible for preliminary hearings and misdemeanor vehicular crimes in the centrally located justice courts. He would also cover the arraignment calendar on a limited basis.

MCAO has adopted screening procedures to protect against any compromise of confidential information. Rueter was instructed not to speak to anyone about any previous representation of a criminal defendant, including cases where he personally represented the defendant or may have spoken to the attorney of record. He was reminded of his ethical obligation to maintain the confidences of his former clients and told that if he disclosed such information, he would be disciplined by MCAO and reported to the state bar. Rueter had provided MCAO with a list of 211 criminal cases, including the instant cases, in which he had performed some activity while in private practice and MCAO subsequently directed that a memorandum be permanently attached to each of those files directing that no attorney or staff member discuss that case or any aspect of the prosecution with Rueter.

The trial court determined that notwithstanding the screening mechanism that was put in place, disqualification of the entire prosecutor's office was necessary to ensure the integrity of the prosecution and avoid the appearance of impropriety. We disagree that such vicarious disqualification was necessary.[2]

### 1. An Overview

▮▮▮▮ Prior to Arizona's adoption in 1985 of the Rules of Professional Conduct, the question of vicarious disqualification of a county attorney's office was governed by two ethical principles derived from the Code of Professional Responsibility. First, knowledge of one attorney was equivalent to knowledge of all attorneys, the so-called "imputed knowledge" principle. Second, in light of this imputed knowledge, an appearance of evil undermining public confidence was created when a defendant's attorney changed employment and joined the prosecution. *State v. Latigue,* 108 Ariz. 521, 523, 502 P.2d 1340, 1342 (1972). The only remedy for this state of affairs was disqualification of the entire prosecutor's office. *Id.*

The underpinnings of the *Latigue* decision were apparently removed in 1985 by our supreme court's adoption of the Arizona Rules of Professional Conduct, specifically ER 1.11. This rule provided in pertinent part:

> (c) Except as law may otherwise expressly permit, a lawyer serving as a public officer or employee shall not:
>
> > (1) participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernment employment

> .   .   .   .   .

The comment to ER 1.11 is specific that "[p]aragraph (c) does not disqualify other lawyers in the agency with which the lawyer in question has become associated."

The initial response to the new rule came in Opinion No. 85–6 of the Arizona State Bar Ethics Committee. On facts almost identical to those of *Latigue,* the Ethics Committee opined that while the former public defender who joined the prosecutor's office was disqualified from prosecuting the co-defendants of the attorney's former client, ER 1.11(c) clearly precluded vicarious disqualification of the entire prosecutor's office. The committee concluded that *Latigue* simply no longer applied.

Our supreme court, however, declined to permit the "appearance of evil" feature of the *Latigue* analysis to perish. In *Gomez v. Superior Court,* 149 Ariz. 223, 717 P.2d 902 (1986), dealing with direct, not vicarious, disqualification, the court acknowledged that the recently adopted Rules of Professional Conduct had dropped the "appearance of impropriety" prohibition found in the old Code of Professional Responsibility. Nevertheless, the court held that the concept remained an integral part of any conflict-of-interest analysis in Arizona, although the

---

2. Our analysis deals with attorneys moving from the private to the public sector. Vicarious disqualification arising from employment changes within the private sector is governed by ER 1.10. *Towne Dev. of Chandler, Inc. v. Superior Court,* 173 Ariz. 364, 842 P.2d 1377 (App.1992).

court emphasized that an appearance of impropriety is not *per se* disqualifying. *Id.* at 225, 717 P.2d at 904.

The first encounter between appearance of impropriety and ER 1.11(c) came in *Turbin v. Superior Court*, 165 Ariz. 195, 797 P.2d 734 (App.1990). There the defendant's attorney actively represented the defendant for almost six months before withdrawing to join the prosecutor's office. The defendant then sought to disqualify the entire office, consisting of the elected Navajo County Attorney and six or seven deputies, even though no actual impropriety had been alleged or shown. This court acknowledged that the record clearly demonstrated the former attorney had severed himself from contact of any kind regarding defendant's prosecution. Nevertheless, this court required disqualification of the entire office. Relying in part on *Gomez*, we found that appearance of impropriety remained a vital factor in the vicarious disqualification context and decided that despite the comment to ER 1.11(c), such disqualification can be required on the basis of an appearance of impropriety.

*Turbin* suggested that formulating a bright line rule for vicarious disqualification was impossible and instead engaged in a fact-specific analysis leading to its result. The same approach was used a few years later in *State ex rel. Romley v. Gottsfield*, 171 Ariz. 195, 829 P.2d 1241 (App.1992). There the trial court disqualified the Maricopa County Attorney's Office from continuing to prosecute a murder defendant when an attorney who had shared letterhead and office space with defendant's attorney from defendant's first trial joined the prosecutor's office. The trial judge found this associated attorney had gained strategic information about witnesses and mental impressions of defendant's attorney and this created a potential for use of confidential information. The trial court then concluded, without analysis, that the hiring of the associate created an appearance of impropriety sufficient to disqualify the entire office.

This court again examined all the evidence and drew a different interpretation than that of the trial court. We found the defendant had proved, at most, that the associated attorney may have received insignificant information from defendant's attorney and there was no appearance of impropriety sufficient to require vicarious disqualification. Consequently, the disqualification order was vacated.

Despite our attempts in *Turbin* and *Gottsfield* to provide a framework for analyzing vicarious disqualification issues, uncertainty still exists as to when such disqualification is necessary. For example, in *Turbin* the prosecutor argued for the same result that had been reached by the State Bar Ethics Committee in Opinion No. 85–6, namely that the only inquiry is whether actual prejudice has occurred and appearance of impropriety is a non-issue. 165 Ariz. at 197, 797 P.2d at 736. In *Gottsfield*, on the other hand, the prosecutor apparently was willing to concede that if the associate in question had to be disqualified, vicarious disqualification necessarily followed. 171 Ariz. at 196, 829 P.2d at 1242. This was notwithstanding that under *Turbin* the associate's disqualification, if necessary, would operate only to prompt an inquiry into appearance of impropriety, not decide the issue. In the instant case, the prosecutor has attempted to persuade us that the activity of Rueter on behalf of these defendants was not substantial and, therefore, would not even require his disqualification, much less that of the entire office.

Perhaps this latest argument was advanced in hopes of avoiding the uncertainties of an appearance of impropriety analysis. Nevertheless, we will again address this issue and attempt to distill the case law into some useful guidelines. We emphasize these are only guidelines and trial courts will still need to examine closely the facts of each case with an eye to the ultimate goal of maintaining confidence in the integrity of the judicial system. *See Latigue*, 108 Ariz. at 523, 502 P.2d at 1342.

## 2. The Guidelines

■ Upon the filing of a motion for vicarious disqualification [3] the trial court must first

---

3. We are assuming in this discussion that no

assertion of an actual impropriety is alleged,

determine whether the subject attorney must be disqualified from prosecution of the case. The inquiry under ER 1.11(c) is whether the attorney personally and substantially participated in the matter for which the prosecutor is seeking to hold the defendant accountable.[4] We note that the burden of establishing such disqualification is on the defendant. *State v. Pennington,* 115 N.M. 372, 851 P.2d 494, 500–01 (App.1993). We also note that if the defendant fails in this burden, the inquiry ends since logic dictates that if there is no disqualification of the newly hired attorney there can be no vicarious disqualification of the office.

■ Assuming defendant carries his burden, the public agency then must demonstrate why vicarious disqualification is not required. *Pennington,* 851 P.2d at 501. In considering this question, the trial court's frame of reference is one of balancing the policy underlying ER 1.11(c) against a reasonable defendant's expectation that his or her interests will not be compromised. In connection with this policy, we point out that ER 1.11 is a major change from the old Code of Professional Responsibility. Under that Code, there was little reason for a separate vicarious disqualification analysis since such disqualification was almost necessarily mandated due to the "imputed knowledge" principle.[5] The comment to ER 1.11 expresses the reasons for the change:

> [T]he rules governing lawyers presently or formerly employed by a government agency should not be so restrictive as to inhibit transfer of employment to and from the government. The government has a legitimate need to attract qualified lawyers as well as to maintain high ethical standards. The provisions for screening and waiver

are necessary to prevent the disqualification rule from imposing too severe a deterrent against entering public service.

■ In beginning its analysis, the trial court should first look to the appearance to the particular defendant that is created by the transfer of his former attorney (or associate of same) to the prosecutor's office. In judging this appearance, the court must consider such matters as the length of the prior representation, the intensity of the representation, the nature of the crime, and the notoriety the crime may have received. The court should then examine the countervailing considerations including the size of the prosecutor's office,[6] the placement of the newly hired attorney in the office, and the screening mechanism, if any, that is put in place to protect against impropriety.[7] The court should then apply a "reasonable person" standard to answer the question whether a reasonable person standing in the shoes of the defendant should be satisfied that his or her interests will not be compromised by the hiring.

■ In most cases an effective screening mechanism will satisfy the defendant's interests and permit implementation of the policy change underlying ER 1.11(c). These mechanisms have been suggested for some time to guard against unauthorized disclosure as well as remove the need for vicarious disqualification. Formal Opinion No. 342, ABA Committee on Ethics, 62 A.B.A.J. 517, 521 (1976); *see also* ER 1.11, comment. Such a mechanism must be designed both to eliminate opportunities for inadvertent disclosure and to provide a genuine appearance of a security wall around the subject attorney. Therefore, the more comprehensive the mechanism is, the more likely that it will

such as the actual compromise of confidential information. This opinion does not address this contingency or the remedy therefor.

4. There may be other bases for attorney disqualification arising under other ethical rules. We do not attempt here to discuss all possibilities but assume that any such disqualification would at least trigger a vicarious disqualification inquiry.

5. *See* Formal Opinion No. 235, quoted and adopted in *State v. Latigue,* 108 Ariz. 521, 523, 502 P.2d 1340, 1342 (1972).

6. A reading of *Turbin* and *Gottsfield* might lead one to conclude that a small prosecutor's office would find it next to impossible to withstand an appearance of impropriety scrutiny. We do not think these cases stand for this proposition. While the size of the office has some bearing on the ability to effectively screen, there is no reason to believe a small office cannot create a satisfactory mechanism.

7. These listings do not purport to be all-inclusive.

accomplish these purposes. We certainly approve the inclusion of a violation reporting requirement and sanctions in the event of a violation. We also think reducing the mechanism to writing with officewide distribution as required reading for all personnel will enhance its effectiveness. Finally, the details of the mechanism must be communicated to the defendant and his counsel.

■ The premise underlying the non-disqualification policy of ER 1.11(c) is that a prosecutor usually has no particular motive to intentionally breach the security wall created by the screening mechanism. Formal Opinion No. 342, 62 A.B.A.J. at 521. A prosecutor's sole duty is to do justice and he or she "has no financial incentive to obtain prohibited information." *Pennington,* 851 P.2d at 498. While this will be true in the vast majority of cases, we anticipate there will be some cases where screening simply will not be able to overcome the appearance of impropriety. As every member of the public is aware, people are motivated by more than economics. Since we are here dealing with "appearance," both to the public as well as to individual defendants, trial courts must carefully scrutinize any case with, for example, a high public profile or strong political overtones. We emphasize again that the ultimate goal is to maintain both public and individual confidence in the integrity of our judicial system.

### 3. Disqualification of Rueter

■ We turn now to the case at bar. As discussed above, we must first decide if Rueter participated personally and substantially in the representation of these defendants and thus should be disqualified. In examining this relationship, the trial court found that although Rueter's participation varied with each of the cases, he did have substantial contact with each of the defendants. The court determined that in every case, Rueter was the counsel of record and discussed the merits of the case with each client. The state argues, however, that even though Rueter was privy to confidential information, his participation in the subject

cases fails to rise to the level of "substantial" as that term is used in ER 1.11.

We have no difficulty in agreeing with the trial court that Rueter's participation qualifies as "substantial." Instructive in this regard is *In re Ockrassa,* 165 Ariz. 576, 578–79, 799 P.2d 1350, 1352–53 (1990), where our supreme court held that an attorney who prosecutes an individual whom the attorney formerly represented in private practice commits an ethical violation if the subject matter of the prosecution incorporates, even indirectly, the subject matter of the former representation. *Ockrassa* based its finding on ER 1.9 which prohibits a lawyer from: (1) undertaking representation materially adverse to the interests of the former client in a matter substantially related to the former representation without consent and, (2) from using information relating to the former representation to that client's disadvantage.[8] In construing ER 1.9, the *Ockrassa* court forbade such conduct, *inter alia,* because of the danger that confidential information obtained from the prior representation would be used to the client's detriment.

■ We see no reason to construe the prohibition of ER 1.11 differently than that of 1.9, at least in the context of criminal prosecutions. Consequently, we hold that whenever an attorney obtains confidential information from a client in a criminal case, that attorney's participation is "personal" and "substantial" for purposes of ER 1.11(c). *See State v. Smith,* 123 Ariz. 231, 235, 599 P.2d 187, 191 (1979); *State v. Lozano,* 121 Ariz. 99, 101, 588 P.2d 841, 843 (App.1978). Because Rueter received confidential information while representing clients in each of the named cases, he is prohibited from personally participating in the prosecution of those defendants.

### 4. Disqualification of MCAO

■ The main question here is whether Rueter's disqualification must also disqualify the entire prosecutor's office. While we would ordinarily remand to permit the trial court to review its ruling in light of this opinion, we believe the record is sufficient to

8. Except as permitted by ER 1.6.

**230**

permit us to conclude as a matter of law that vicarious disqualification is not necessary. In so doing, we accept the trial court's factual finding that Rueter's participation was substantial but disagree with its legal conclusion that there existed an appearance of impropriety requiring vicarious disqualification.

In commencing our analysis, we first consider that Rueter's length of employment with defendants' primary counsel was from September 1, 1994 through June 12, 1995. However, in only two of the cases did Rueter have any involvement in 1994 and in many of them he was involved for two months or less. Rueter's participation in these cases consisted of attempting to negotiate plea agreements, interviewing witnesses, or conducting preliminary hearings. None of the matters had apparently been prepared for trial and it has not been suggested that Rueter was to be trial counsel for any of the defendants who might actually proceed to trial. The crimes included ten drug charges, two armed robberies, one child abuse, one aggravated assault and one attempted murder. Although it is certainly a sad commentary, none of these crimes is out of the ordinary in our modern society. More specifically, and viewed in the context of this discussion, none of these crimes is of a type that a reasonable person would believe might tempt a prosecutor to risk a career by violating his or her ethical principles to breach the screening procedures. We lastly note that nothing in the record suggests these cases have received any notoriety.

With respect to the countervailing considerations, we first consider that the Maricopa County Attorney's Office has some 240 attorneys, with differing levels of responsibility. Rueter is at a lower level, having been placed in the Pretrial Bureau where he would not have any professional or regular contact with the attorneys prosecuting defendants. In addition to the directive to Rueter regarding his ethical obligation and threat of sanctions, the screening mechanism included a written memorandum on each of the 211 files directing all who may be involved in the case to have no discussion with Rueter regarding any aspect of the case. Both the fact and appearance of these efforts are the creation of an effective security wall.

Applying an objective, "reasonable person," standard to these facts, we find that MCAO has sufficiently protected against inadvertent disclosure of confidential information. We also find that none of these cases is of a high public profile, has strong political overtones, or in any other way carries a risk of intentional violation of ethical proscriptions. We therefore conclude that a reasonable defendant should be satisfied that his or her interests will not be compromised and there is no appearance to a reasonable member of the public of any impropriety in MCAO continuing to prosecute these cases.

For the reasons set forth above, we vacate the trial court's order of vicarious disqualification and remand these matters for further proceedings.

EHRLICH, P.J., and WEISBERG, J., concur.