COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges O'Brien, Lorish and Senior Judge Annunziata
Argued at Alexandria, Virginia


JASON SAM HARRIS

v.        Record No. 1174-21-4

COMMONWEALTH OF VIRGINIA                          OPINION BY
                                          JUDGE LISA M. LORISH
JASON HARRIS, S/K/A                           SEPTEMBER 27, 2022
   JASON SAM HARRIS

v.        Record No. 1372-21-4

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
James E. Plowman, Judge

Paul D. Fore, Senior Trial Attorney, for appellant.

Timothy J. Huffstutter, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


When a former defense attorney begins working as a prosecutor, the Office of the

Commonwealth's Attorney must implement screening procedures to protect the due process rights

of any of the former clients of that attorney, should those clients later face additional criminal

proceedings.  A court reviewing those procedures should consider a range of factors to decide

whether the former defense attorney was effectively screened from a related matter.  We find no

error here in the court's conclusion that Harris's former attorney was effectively screened from the

prosecutor working on his new probation violation proceeding.

BACKGROUND[1]

In 2010, Harris was convicted of two counts of petit larceny, third or subsequent offense, failure to appear, and forgery of a uniform summons. The court sentenced him to thirteen years' incarceration with nine years and six months suspended, conditioned on good behavior and the successful completion of supervised probation. In December 2017 and again in June 2019, the court found he had violated the conditions of his suspended sentence, revoked his sentence, and then resuspended it in part. Roshni Dhillon, an Assistant Public Defender in Fauquier County, represented Harris in the June 2019 revocation proceedings.

Dhillon then took a position as an Assistant Commonwealth's Attorney in Fauquier County in September 2019. As part of her transition, she compiled a list of cases that might create a conflict of interest. She included Harris's revocation case on that list.

In July 2020, Harris was arrested on a new charge for failing to register as a violent sex offender. Harris's new public defender emailed Abigail Owens, the Senior Assistant Commonwealth's Attorney who was prosecuting Harris, and asked whether Owens intended to seek a special prosecutor because of Dhillon's prior representation of Harris. Owens responded within minutes: "She previously represented him on this charge?" After clarifying that Dhillon had not represented him on the failure to register charge, but for a prior probation violation, Owens said that they would not be getting a special prosecutor.

In October 2020, Harris reached an oral agreement with the Commonwealth where he would waive a preliminary hearing and plead guilty to the failure to register charge in exchange for the Commonwealth not bringing any other charges. Before that plea could be entered, Harris's

---

[1] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

probation officer reported alleged violations of the term of probation Harris was serving for his 2020 offenses, based on (1) the new charge of failing to register as a violent sex offender, (2) a new conviction for unauthorized use of a motor vehicle in another jurisdiction, and (3) the fact that Harris had changed his address without notifying his probation officer and absconded from supervision. The same public defender was appointed to represent Harris on the probation violation charges.

Harris then made a motion to appoint a special prosecutor for both the failure to register as a sex offender charge and the new revocation proceeding. At a hearing on the motion, Harris argued that there was a conflict of interest because Dhillon had "obtain[ed] confidences" when she represented him in the 2019 revocation. Harris asserted that the Commonwealth had not effectively screened Dhillon from Owens (the attorney prosecuting Harris) because Owens had not even realized there was a conflict until Harris's counsel emailed her.

In response, the Commonwealth proffered that it had contacted the Virginia State Bar Ethics Counsel upon hiring Dhillon and was complying with the advice it had received. The Commonwealth also explained its screening procedures for potential conflicts. In this case, Dhillon's conflict was noted on all of Harris's case files and Dhillon was excluded from working on his cases. The Commonwealth also submitted affidavits from Owens and Dhillon. Owens certified that Dhillon was not involved in prosecuting Harris and that the front of Harris's file was marked with "RD Conflict" to ensure "other members of [the] office" would not "involve" Dhillon in the case. Dhillon certified that she had not "been involved" with Harris's cases or disclosed "any client confidences." Both Owens and Dhillon verified that they would continue to take precautions to ensure Dhillon was "in no way involved" in the prosecution of Harris's cases. Finally, the Commonwealth argued that Harris's motion was motivated by gamesmanship and the hope that a

special prosecutor might consider a global resolution to the pending matters—something Owens had rejected.

The trial court[2] denied the motion, concluding that there was no *per se* rule that required a special prosecutor under the circumstances and that the Commonwealth's affidavits established that Dhillon had been appropriately screened from Harris's cases. The court also agreed with the Commonwealth that Harris's motion had been made strategically because he "could not get a global resolution" of his cases.

Harris later pled guilty to failing to register as a violent sex offender. At the plea hearing, the trial court went through a thorough plea colloquy with Harris to ensure his plea was knowing and voluntary. The trial court accepted the plea and convicted Harris of failing to register as a violent sex offender. The trial court then found Harris in violation of his probation. Harris was sentenced for the failure to register and the probation violation in October 2021, and he timely appealed both judgments.

More than twenty-one days later, Harris moved the trial court, under Code § 19.2-303, to reconsider its ruling denying his motion to appoint a special prosecutor and to grant a new sentencing hearing. The motion restated the arguments Harris presented in his initial motion to appoint a special prosecutor and asserted that the court had a duty to protect the judicial process from the appearance of impropriety. The trial court denied Harris's motion for reconsideration without a hearing. Harris timely noted a second appeal, challenging the trial court's order denying his motion to reconsider and request for a new sentencing hearing.[3]

---

[2] Judge Lon E. Farris presided at the hearing and denied Harris's motion to appoint a special prosecutor.

[3] Harris's appeal of his failure to register conviction and probation violation judgment (1174-21-4) and his appeal of the denial of his motion to reconsider the same (1372-21-4) have been consolidated here.

ANALYSIS

Harris argues that the trial court should have granted his motion to appoint a special prosecutor to protect the judicial process from the appearance of impropriety. In so arguing, he invokes the "due process rights of a criminal defendant under both the Virginia and United States Constitutions [which] are violated when a Commonwealth's Attorney who has a conflict of interest relevant to the defendant's case prosecutes the defendant." *Powell v. Commonwealth*, 267 Va. 107, 138 (2004). While the "'decision whether to disqualify a [prosecutor] in a particular case is committed to the sound discretion of the trial court,' . . . 'whether a defendant's due process rights are violated . . . is a question of law, to which [this Court] appl[lies] a *de novo* standard of review.'" *Brown v. Commonwealth*, 74 Va. App. 721, 736 (2022) (alterations in original) (first quoting *Lux v. Commonwealth*, 24 Va. App. 561, 569 (1997); then quoting *Price v. Commonwealth*, 72 Va. App. 474, 488 n.5 (2020)). We are "bound by the trial court's findings of historical fact unless plainly wrong or without evidence to support them." *Matthews v. Commonwealth*, 65 Va. App. 334, 341 (2015) (quoting *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (*en banc*)).

We start by addressing a procedural matter. The Commonwealth argues that Harris waived his right to appeal when he pled guilty to his failure to register charge and so he is foreclosed from arguing on appeal that the trial court should have granted his motion for a special prosecutor in that case. We agree. "An unconditional guilty plea constitutes a waiver of the right to appeal all non-jurisdictional antecedent rulings and cures all antecedent constitutional defects." *Delp v. Commonwealth*, 72 Va. App. 227, 235 (2020) (quoting *Terry v. Commonwealth*, 30 Va. App. 192, 197 (1999) (*en banc*)). At his guilty plea hearing, Harris expressly

- 5 -

acknowledged that he was waiving his "right to appeal any decision" of the trial court.[4]  By pleading guilty unconditionally, Harris waived both his challenge to the trial court's ruling denying a special prosecutor and the denial of his motion to reconsider based on the same argument.

But Harris did not waive the right to appeal the trial court's rulings in his probation revocation case.  So we proceed to the merits of whether the trial court erred by not appointing a special prosecutor for the revocation proceedings.

A trial court has the "power to disqualify a Commonwealth's attorney from proceeding with a particular criminal prosecution if the trial court determines that the Commonwealth's attorney has an interest pertinent to a defendant's case that may conflict with the Commonwealth's attorney's official duties." *Lux*, 24 Va. App. at 568.  This power is not freestanding but is instead grounded in a criminal defendant's "constitutional protection against prosecutors who are partial to interests beyond their official duties." *Id.* at 568-69.  These due process rights "under both the Virginia and United States Constitutions" protect a defendant from prosecution by a prosecutor with "either a personal interest in the outcome of the prosecution or an interest arising from his or her former representation of the defendant that conflicts with the fair minded exercise of his or her prosecutorial discretion." *Id.* at 569-70.  A court's authority to intervene and vindicate a defendant's constitutional right to impartial prosecution stands as an exception to the general rule that "[a]t common law, a prosecuting

---

[4] Harris argues that we should invoke the "ends of justice" exception to allow him to appeal this issue.  But this exception, found in Rule 5A:18, only permits us to consider arguments that an appellant failed to preserve below.  Harris has not invoked any of the narrow exceptions that allow for appellate consideration of issues that fall outside of the scope of a valid appeal waiver. *See, e.g.*, *Class v. United States*, 138 S. Ct. 798, 805 (2018) (holding that an unconditional guilty plea does not waive a challenge to the constitutionality of the statute of conviction); *United States v. Beck*, 957 F.3d 440, 445 (4th Cir. 2020) (finding that the defendant's argument that his conviction exceeded statutory authority survived a guilty plea waiver).

attorney 'is the representative of the public in whom is lodged a discretion . . . , which is not to be controlled by the courts . . . .'" *Adkins v. Commonwealth*, 26 Va. App. 14, 17-18 (1997) (quoting *Ganger v. Peyton*, 379 F.2d 709, 713 (4th Cir. 1967)).

When a former defense attorney becomes a prosecutor, it does "not *per se* disqualify the entire office from handling the prosecution" of someone the defense attorney previously represented in a related matter. *Lux*, 24 Va. App. at 573. In rejecting *per se* disqualification, we adopted a "more flexible, case-by-case approach" to determine whether, under the circumstances, prosecution would violate a defendant's due process rights. *See id.* The initial burden falls on the defendant to establish that a member of the prosecutor's office previously "counseled him on a matter related to the pending criminal case." *Id.* at 575. If established, the "presumption arises that the employees of a Commonwealth's Attorney's office share confidences with respect to matters handled by the office." *Id.* The burden then falls on the Commonwealth to "rebut this presumption by proving that the defendant's former lawyer has been effectively screened from contact with the Commonwealth's attorneys working on the defendant's case." *Id.*

*Lux* is our only case to consider the "effective screening" prong of this test in any detail. There, this Court found that the Commonwealth's proffer that there was a "[C]hinese wall" between the current prosecutor and the defendant's former public defender-turned-prosecutor was insufficient evidence of effective screening. *Id.* at 574-76. We observed that the Commonwealth had not presented any other evidence, "such as affidavits . . . regarding the existence and effectiveness of the screening procedures actually utilized." *Id.* at 576. Apart from determining that a mere proffer was insufficient and suggesting that affidavits about a screening procedure may be relevant evidence, we have never affirmatively identified the

various factors a court should consider in determining whether a former defense attorney was "effectively screened" from a related matter.

In addressing the same situation, other courts have broadly agreed that a trial court needs "substantial latitude" to decide whether a prosecutor must be disqualified. *Johnson v. State*, 61 P.3d 1234, 1243 (Wyo. 2003). Those courts have also found that "[w]hat constitutes an effective screening procedure will depend on the particular circumstances of each case." *State v. Kinkennon*, 747 N.W.2d 437, 445 (Neb. 2008). Our "flexible, case-by-case approach" affirms these same principles. *Lux*, 24 Va. App. at 573.

Several of these courts have further clarified what an effective screen requires. The Supreme Court of Nebraska explained that "at a minimum, the disqualified lawyer should acknowledge the obligation not to communicate with any of the other lawyers in the office with respect to the matter" and that "the other lawyers in the office who are involved with the matter should be informed that the screening is in place and that they are not to discuss the matter with the disqualified lawyer." *Kinkennon*, 747 N.W.2d at 445. That court also emphasized timing, explaining that "screening procedures must be implemented as soon as practical after a lawyer or government office knows or reasonably should know that screening is needed." *Id.*

The Supreme Courts of Kentucky, South Dakota, and Wyoming have gone further and adopted the same list of guidelines that presumptively show that a screen is effective:

> 1. Oral and written directions must be given to all staff members that the attorney will not participate in any matter in which the attorney participated as a public defender or criminal defense attorney. A written screening policy must be put in place to ensure this requirement is met.
>
> 2. A letter should be directed to every former client of the attorney announcing the new employment relationship. This letter may be sent to the client, care of the client's current attorney. Ideally, this letter should appear in the court record of an affected criminal case.

3. The prosecuting attorney's screening policy should be sent to every judge in the district, circuit, and/or county affected.

4. A copy of the screening policy should be placed in every active case file in which the attorney participated.

5. All office employees should be advised both orally and in writing that any violation of the screening process must be reported immediately and that inattention to the screening policy will result in discipline.

6. In a prominent location near case files, post a list of all cases from which the attorney is to be screened.

*Johnson*, 61 P.3d at 1243 (citing *Matter of R.B.*, 583 N.W.2d 839, 841-42 (S.D. 1998)); *see also Calhoun v. Commonwealth*, 492 S.W.3d 132, 137-38 (Ky. 2016).

Without adopting quite so comprehensive a list of guidelines, the Tennessee Supreme Court has similarly stressed the importance of "effective, written screening procedures to avoid the problems related to conflicts of interests" and offered its own list of factors for consideration. It stated that screening mechanisms should consider the "structural organization of the . . . office, the likelihood of contact between an attorney with a conflict of interest and the personnel involved in the ongoing representation, and the existence of rules that prevent the attorney with the conflict of interest from accessing files or information pertaining to a particular case." *State v. Davis*, 141 S.W.3d 600, 615 n.10 (Tenn. 2004). Finally, the Arizona Court of Appeals observed that a screen "must be designed both to eliminate opportunities for inadvertent disclosure and to provide a genuine appearance of a security wall around the subject attorney" and that "[t]herefore, the more comprehensive the mechanism is, the more likely that it will accomplish these purposes." *State ex rel. Romley v. Superior Court*, 908 P.2d 37, 42-43 (Ariz. Ct. App. 1995).

Stitching together these common threads, we hold that a screening mechanism can never be effective unless, at a minimum (1) the disqualified lawyer acknowledged the obligation not to

communicate with the lawyers working on the matter and (2) those other lawyers knew about the screen and that they could not discuss the matter with the disqualified lawyer. To evaluate the success of a particular screen, the trial court should consider whether a formal screening policy exists, when screening procedures were implemented, how comprehensive the procedures were, and whether affected files were marked or segregated under the policy. Larger offices and high-profile or unusually complex prosecutions may necessarily require more comprehensive mechanisms to ensure effective screening. But, of course, the best-laid plans often go awry. A court must always evaluate testimonial or documentary evidence about whether the procedures and policies were *actually followed* in a given case. We affirm that a trial court must apply a "flexible case-by-case approach" in weighing all of these factors along with any other evidence the Commonwealth may present.

Thus, to evaluate whether the trial court erred in denying the motion to disqualify here, we must (1) determine whether Harris met his burden to show that Dhillon counseled him on a matter related to the pending criminal case and, if so, whether (2) the Commonwealth demonstrated that Dhillon was effectively screened from any attorneys working on Harris's case.

We will assume, without deciding, that Harris met his burden as to the first prong. Dhillon represented Harris at his last probation violation hearing in 2019, and the violation here occurred only a year later. So we turn to the second prong.

Harris filed a written motion to appoint a special prosecutor. The Commonwealth responded with affidavits from Dhillon and Owens. The Commonwealth then proffered additional information at a hearing on the motion. Collectively, this evidence showed that the Commonwealth contacted the Virginia State Bar Ethics Counsel upon hiring Dhillon and created a general screening procedure for when Dhillon may have a conflict. Under that unwritten policy, any case files involving someone Dhillon had represented were marked with a notation about the conflict, and

such cases were not assigned to Dhillon. Any prosecutor working on the matter understood that they were not to speak to Dhillon. The affidavits confirmed that, in this case, Harris's case files were marked with "RD Conflict" and that Dhillon had not been involved with either his probation violation or the new failure to register charge. While Harris argues that the Commonwealth was unaware of the conflict until his counsel contacted them in October 2020, this email exchange occurred several months *before* Harris's probation officer began the violation proceedings in January 2021 and further supports the finding that an effective screen was in place before then.[5] The trial court considered all of this evidence at a hearing and found that Dhillon had been appropriately screened from Harris's cases.[6]

Thus, we find the trial court did not err in concluding from all the circumstances that an effective screen was in place and that therefore Harris's due process rights were not violated. For these same reasons, even assuming without deciding that the trial court had continuing jurisdiction under Code § 19.2-303[7] over Harris's motion to reconsider the appointment of a special prosecutor for his probation violation proceedings, the trial court did not err by denying the same.

---

[5] As discussed above, Harris waived his argument that a special prosecutor should have been appointed for his failure to register prosecution.

[6] The Commonwealth argued below, and again on appeal, that Harris's motion for a special prosecutor was suspect due to its timing. In discussing the reasons for its holding, the trial court picked up on this theme, and mentioned that it was clear Harris's motion was motivated by strategic considerations and an effort to obtain a better global resolution from a special prosecutor. Harris filed a timely written motion seeking disqualification well before any trial or revocation date. A defendant's strategic choice to waive or assert various constitutional rights does not diminish the existence of those rights. Nor can a defendant's trial strategy be relevant to the Commonwealth's burden of proving that effective screening procedures ensured an impartial prosecution.

[7] Harris filed his motion more than twenty-one days after the judgment of the trial court was final. *See* Rule 1:1(a) ("All final judgments, orders, and decrees, irrespective of terms of court, remain under the control of the trial court and may be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer."); *Wilson v. Commonwealth*, 54 Va. App. 631, 641 (2009) (Code § 19.2-303 only applicable if the defendant presents trial court with "circumstances in mitigation of the offense.").

## CONCLUSION

For these reasons, we affirm the trial court's judgments.

*Affirmed.*